**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                              )
Stanford B. Weinstein,                               )
                                                              )          Case No. 1:10-cv-01768
                                                              )          Judge Contreras
                            Plaintiff,                       )
                                                              )
            v.                                               )
                                                              )
District of Columbia Housing Authority,        )
                                                              )
                                                              )
                            Defendant.                   )
_____)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Stanford B. Weinstein ("Weinstein" or "Plaintiff"), through his undersigned

counsel, hereby submits this Memorandum of Law in Opposition to Defendant District of

Columbia Housing Authority's ("DCHA" or "Defendant") Motion for Summary Judgment.

For the reasons stated below, Defendant's motion should be denied in its entirety.

**I.      PRELIMINARY STATEMENT**

On June 12, 2012, Plaintiff filed a Motion for Summary Judgment with regard to:

(a) Defendant's material breach of the parties' lease by failing to pay real estate taxes,

utility charges and associated late fees and interest; (b) Defendant's material breach of

the parties' lease by failing to properly maintain the property and its systems in good

working and sanitary condition and failing to reimburse Plaintiff for damage done and

unauthorized alterations made to the property; (c) Plaintiff's claim for reimbursement of

his costs incurred to enforce his rights pursuant to the lease; and, (d) Defendant's

asserted affirmative defense of accord and satisfaction. [1]

Defendant has now moved for summary judgment, asserting that (a) DCHA is not

obligated to Plaintiff for real estate taxes, utility charges, late fees and interest, because

of an alleged accord and satisfaction; (b) DCHA is not obligated to reimburse Plaintiff for

repairs made to the Property; and (c) DCHA is not obligated to reimburse Plaintiff for

attorneys' fees and costs.  DCHA also asserts a Counterclaim for alleged overpayments

to Plaintiff and argues that, if the Court finds that an accord and satisfaction did not

occur, it is entitled to summary judgment as to that Counterclaim.

As set forth more fully below, Defendant's motion must be denied.  First, even

accepting all of Defendant's allegations, it has not established that it is entitled to

judgment as a matter of law on any of the claims.  Second, the allegations relied upon by

Defendant are legally insufficient to constitute *material* facts that a Court should

consider on a motion for summary judgment because (a) they are improperly supported

by affidavits that seek to contradict or supplement the binding 30(b)(6) testimony of

Defendant and, as a matter of well established law, must be disregarded by this Court;

(b) they are asserted in conclusory fashion without citation to reliable evidence; and/or,

(c) they are not relevant to the legal issues presented in this case.  Third, if the Court

does consider the allegations advanced by Defendant *and* determines that Defendant's

allegations are sufficient to constitute *material* facts, many of the allegations Defendant

presents in its motion are contested by Plaintiff.  Thus, Defendant cannot establish that

there are no genuine issues of material fact in dispute and that it is entitled to judgment

---

[1] *See* Plaintiff's Motion for Summary Judgment, ECF No. 40.  For all of the reasons set forth in Plaintiff's
Motion, summary judgment should be granted in favor of Plaintiff on all claims.

as a matter of law.  Defendant's motion for summary judgment must, therefore, be
denied.

II.     <u>STATEMENT OF FACTS NOT IN DISPUTE</u>

A. <u>Termination of the Lease and Amounts Due Plaintiff</u>

During all times relevant to the issues in this proceeding, Plaintiff was the owner
of certain real property located in the District of Columbia identified as Lot 839 in Square
672 with the improvements thereon, known as 16 M Street, NE and an adjacent parking
lot known as Lot 251 in Square 672, in the District of Columbia (the "Property").  *See* Pl.
SMF ¶1.[2]  On or about October 17, 1997, Defendant and Plaintiff entered into a written
lease agreement pursuant to which the Property was leased to Defendant.  *See* Def.
SMF ¶1.[3]  From time to time thereafter, Defendant and Plaintiff entered into written
extensions and addendums to the lease.  The latest and final amendment and
addendum to the lease is dated and was entered into on or about August 8, 2008 (the
"Final Addendum") (hereinafter, the lease, as amended from time to time, is referred to
as the "Lease").  *See* Def. SMF ¶2.

On or about January 20, 2010, Plaintiff received from Defendant, by Federal
Express, a written "notice of nonrenewal" which purported to "confirm[] the lease
termination date of May 31, 2010."  *See* Def. SMF ¶8 and Ex. C.  On or about April 30,
2010, Plaintiff sent Defendant a detailed accounting of amounts then due, owing, and
overdue under the Lease.  *See* Def. SMF ¶9 and Ex. E.  By letter dated May 21, 2010,
Defendant disputed Plaintiff's calculation of the amounts then due and owing under the

---

[2] References to Pl. SMF refer to Plaintiff's Statement of Material Facts Not in Dispute in Opposition to
Defendant's Motion for Summary Judgment, filed herewith.
[3] References to Def. SMF refer to the "Statement of Material Facts As To Which There Is No Genuine
Issue" filed by Defendant DCHA in support of its Motion for Summary Judgment, ECF No. 42.

Lease and acknowledged that it did owe certain sums to Plaintiff.  *See* Def. SMF ¶10 and Ex. D.

On or about June 3, 2010, Plaintiff received a check from Defendant in the mail, dated June 1, 2010.  *See* Def. SMF ¶14 and Ex. F.  It was DCHA's standard practice under this Lease for more than 12 years to periodically send checks as payment on account.  *See* Pl. SMF ¶ 3.  The June 1, 2010 check did not bear any notation, was not accompanied by any cover letter, and did not include any restrictive endorsement to indicate that it was being tendered as an offer of full and final settlement rather than as a payment on account.  *See* Pl. SMF ¶4.   The check was for $654,082.44 – the exact amount Defendant previously acknowledged it owed to Plaintiff.  *See* Def. SMF ¶¶ 11, 14 and Exs. D and F.

On June 10, 2010, Plaintiff and his attorney Judah Lifschitz, Esq. met with Lisa Dean and Qwendolyn N. Brown of DCHA.  *See* Def. SMF ¶15.  The parties discussed the amounts then due under the Lease.  *See* Def. SMF ¶15.  At the June 10, 2010 meeting, Plaintiff hand delivered a letter to Defendant acknowledging receipt of the June 1, 2010 rent check and advising Defendant that Plaintiff would be accepting the check as a payment on account and that the account had an outstanding balance.  *See* Def. SMF ¶15 and Ex. G.  Only after that meeting, on June 11, 2010, did Plaintiff cash the June 1, 2010 rent check.  *See* Def. SMF ¶16.

On June 21, 2010, after the meeting and after the check was cashed, Ms. Brown, the Associate General Counsel for DCHA, wrote to Plaintiff's counsel and advised that DCHA's General Counsel was reviewing the dispute and what Ms. Brown referred to as

Plaintiff's "settlement offer" and that DCHA would get back to Plaintiff's counsel "shortly." *See* Pl. SMF ¶5.

     B. <u>Condition of the Property</u>

     Pursuant to the unambiguous terms of the Lease, "[i]n the event any damage is done to said premises in the installation or removal of [Tenant's] furniture, fixtures and equipment, <u>Tenant shall, at its cost and expense, restore said premises to their original condition, or promptly reimburse Landlord for all such costs</u>." *See* Pl. SMF ¶8. Moreover, the Lease provided that if Tenant failed to remove any such material at the end of its tenancy, and Plaintiff disposed of those materials, "<u>Tenant shall promptly reimburse Landlord for all such costs of removal and disposal</u>." *See* Pl. SMF ¶9.

     The Lease also required DCHA to maintain and repair the Property. Specifically, the express terms of the Lease required that "Tenant shall, at its risk, cost and expense, <u>make all repairs and replacements necessary to keep both the interior and exterior of the Demised Premises and the fixtures and equipment therein in good repair and in property sanitary condition</u>. . . . Tenant shall, at its cost and expense, furnish heat to said premises. . . and shall <u>maintain the heating and plumbing systems in good operating condition at all times</u>. . . .Tenant shall keep the interior and exterior of the Demised Premises in a <u>clean, neat, orderly and attractive condition at all times</u>." *See* Pl. SMF ¶10.

     During the course of DCHA's tenancy, DCHA made extensive and substantial alterations to the Property. *See* Pl. SMF ¶¶11,13. DCHA never requested, and Plaintiff never provided, written consent for any of the alterations. *See* Pl. SMF ¶12.

In July 2010, Plaintiff retained Pizzano General Contractors, Inc. ("Pizzano") and Virginia Roofing Corporation ("Virginia Roofing") to make necessary repairs and replacements to the Property after it was vacated by DCHA.  *See* Pl. SMF ¶¶14, 25. Pizzano and Virginia Roofing were instructed to make repairs and replacements necessary to restore the building to its original warehouse condition and not to make any upgrades to the Property.  *See* Pl. SMF ¶¶15, 16, 26.  Plaintiff paid Pizzano $56,125 and paid Virginia Roofing Corporation $10,460 for the work done to the Property.  *See* Pl. SMF ¶¶24, 29.

     C. <u>Plaintiff's Enforcement of the Lease Terms</u>

Plaintiff retained the services of Shapiro, Lifschitz and Schram, P.C. to provide legal representation relating to the termination of the Lease by DCHA and the issues raised in this litigation, in order to enforce Plaintiff's rights pursuant to the terms of the Lease.  *See* Pl. SMF ¶31.  Plaintiff has, and continues, to pay for the services of Shapiro, Lifschitz and Schram, P.C. as invoiced.  *See* Pl. SMF ¶32.  Pursuant to the unambiguous terms of the Lease, DCHA is "obligated to pay for all reasonable fees and expenses (including court costs and attorneys' fees) incurred by Landlord in enforcing the provisions of this Lease."  *See* Pl. SMF ¶30.

III.     **STATEMENT OF FACTS IN DISPUTE[4]**

In its motion, DCHA alleges that at the parties' meeting on June 10, 2010 and

after receiving Plaintiff's June 10, 2010 letter, "DCHA advised Plaintiff that with [sic.] the

payment of the $654,082.44, was to settle all lawful amounts owed pursuant to the

Lease as outlined in the May 21, 2010 letter." *See* Mem. of Points and Authorities at

p.17.  This allegation is disputed.  It is Plaintiff's position that he reasonably understood

the June 1, 2010 check to be a payment on account and that the DCHA representatives

at the June 10, 2010 meeting never once stated or suggested that the June 1, 2010

check was an offer of full and final settlement which, if accepted, would bind Plaintiff to

an accord and satisfaction.  *See* Pl. Statement of Disputed Facts¶¶1-2.[5]  Rather, the

DCHA representatives voiced absolutely no objection or comment and continued the

negotiations, advising Plaintiff that DCHA would respond shortly to what it described as

Plaintiff's "settlement offer."  *See* Pl. Statement of Disputed Facts ¶3.

DCHA alleges that repairs were required at the Property at the beginning of the

Lease term.  *See* Mem. of Points and Authorities at p. 19-20.  These allegations are

disputed.  It is Plaintiff's position that prior to DCHA taking possession of the property in

1997, Plaintiff visited the property with DCHA representatives multiple times.  *See* Pl.

Statement of Disputed Facts ¶4.  During those visits, DCHA representatives inspected

---

[4] As addressed below, in addition to being contested, each of the allegations addressed in Section III of this Memorandum of Law is properly disregarded by this Court in considering this motion.  First, certain of the allegations addressed herein are supported only by citation to inappropriate affidavits that should be stricken from the record and disregarded.  Second, many of Defendant's allegations are stated in conclusory fashion and lack sufficient, reliable evidentiary support.  Third, many of Defendant's conclusory allegations are directly contradicted by the evidence in the record.  And, fourth, many of Defendant's allegations are irrelevant to the legal issues presented in this case.  However, and most saliently for purposes of this motion, they are contested and, therefore, if the Court does consider them and determine that they are material, Defendant's motion for summary judgment must be denied.
[5] References to Pl. Statement of Disputed Facts refer to the Plaintiff's Statement of Material Facts in Dispute That Are in Dispute in Opposition to Defendant's Motion for Summary Judgment.

the condition of the property to determine whether it was appropriate to meet their needs. *See* Pl. Statement of Disputed Facts ¶4.  As a result of those inspections, DCHA requested that Plaintiff make certain alterations to the property prior to its taking possession of the property.  *See* Pl. Statement of Disputed Facts ¶4.  Those specific requested alterations were outlined in an addendum to the lease entered into between Plaintiff and DCHA on October 17, 1997. *See* Pl. Statement of Disputed Facts ¶4.

In the October 17, 1997 lease addendum, Plaintiff agreed to (a) install floor tiles in the lower level reception area and in the front two offices on the main level of the warehouse; (b) remove that part of the mezzanine level observation deck which extends into the main work area; and, (c) ensure that the air conditioning system was fully operational.  *See* Pl. Statement of Disputed Facts ¶5.  Plaintiff completed each of these tasks at his own expense prior to DCHA taking possession of the property.  *See* Pl. Statement of Disputed Facts ¶5.  No other alterations, modifications, repairs, or replacements were ever requested by DCHA. *See* Pl. Statement of Disputed Facts ¶5. When DCHA took possession of the property, DCHA did not notify Plaintiff of any problem with the condition of the property or any of its systems or fixtures.  DCHA also did not notify Plaintiff of any need to make any repairs or that any element of the property was "unusable".  *See* Pl. Statement of Disputed Facts ¶5.  Finally, Plaintiff asserts that when DCHA took possession, the property was in good condition and its systems were in good working order.  Specifically,

a.  The property was clean and broom swept;
b.  The floors and walls of the warehouse and offices did not have holes, leaks or otherwise require repair;
c.  The bathrooms were in good working condition, had toilet paper and soap dispensers and did not require repair;
d.  The stairs had nosings in place and did not require repair;

  e. The overhead garage doors were in good working condition and did not
      require repair;
  f. The water fountain was in good working condition and did not require repair;
  g. The roof was free of leaks, in good working condition, had all gutters and
      flashing in place, and did not require repair;
  h. The HVAC system was operating, properly maintained, in good working
      condition and did not require repair;
  i. The electrical system was in good working condition and did not require repair.

*See* Pl. Statement of Disputed Facts ¶6.

DCHA also alleges that Plaintiff had knowledge of the alterations that it made to

the Property during the term of the Lease and didn't "complain" about them.  *See* Mem.

of Points and Authorities at p. 21-22.  This allegation is disputed.  It is Plaintiff's position

that after DCHA took possession of the Property in 1997, Plaintiff did not enter the

Property again until the Spring of 2010.  *See* Pl. Statement of Disputed Facts ¶7.  From

time to time during the course of DCHA's tenancy, Plaintiff passed by the Property and

observed it from the outside.  *See* Pl. Statement of Disputed Facts ¶8.  On a handful of

occasions, a DCHA representative was outside the Property and Plaintiff would stop and

speak with those representatives while observing the Property from the outside.  *See* Pl.

Statement of Disputed Facts ¶8.  However, Plaintiff was not aware of the substantial

alterations that DCHA had performed at the Property before Plaintiff entered the Property

in the Spring of 2010.  *See* Pl. Statement of Disputed Facts ¶9.  When Plaintiff observed

the Property from the outside during DCHA's tenancy, Plaintiff could not see into the

Property to observe the substantial alterations.  *See* Pl. Statement of Disputed Facts ¶9.

DCHA also asserts that "Plaintiff, however, waited several months [after DCHA

vacated the Property] before he had work done on his Property."  *See* Mem. of Points

and Authorities at p.22.  This allegation is disputed.  It is Plaintiff's position that Pizzano

General Contractors, Inc. was hired to perform repairs at the Property within a matter of days of DCHA vacating the Property.   *See* Pl. Statement of Disputed Facts ¶10.

DCHA also asserts that "most of the Property fixtures, equipment, furnishing and roofing has a life expectancy and will deteriorate over time".  *See* Mem. of Points and Authorities at p.23.  Defendant fails even to attempt to establish, and Plaintiff disputes that Defendant has established, what the life expectancy is as it relates to any aspect of the Property or its systems.

DCHA asserts, that "Plaintiff also seeks compensation for the renovation that Plaintiff is legally required to do when leasing to a new tenants [sic]."  This allegation is disputed.  It is Plaintiff's position that after DCHA vacated the Property, Pizzano General Contractors, Inc. ("Pizzano") and Virginia Roofing Corporation were hired to make necessary repairs and replacements to the Property.  *See* Pl. SMF ¶¶14, 25.  The contractors were instructed to make those repairs and replacements necessary to restore the building to its original warehouse condition and not to make any upgrades to the Property.  *See* Pl. SMF ¶¶15, 16, 26.  The contractors were not instructed to "bring the Property up to code" or to make any renovations that Plaintiff was "legally required to do".  *See* Pl. Statement of Disputed Facts ¶11.  Plaintiff also denies that he was legally required to make any renovations to the Property. *See* Pl. Statement of Disputed Facts ¶12.

DCHA also alleges that "[a] review of the payments made to Plaintiff has established that DCHA overpaid Plaintiff in [sic] as follows:

      a.  DCHA paid an $8,000 security deposit.
      b.  DCHA overpaid Plaintiff in the amount of $16,764.70 in Office and [sic] Tax
          and Revenue penalties and interest.
      c.  DCHA overpaid Plaintiff in the amount of $1,615.60 in penalties and interest.
      d.  DCHA overpaid Plaintiff in the amount of $7,000 in base rent."

*See* Mem. of Points and Authorities at p. 25.  This allegation is disputed.  It is Plaintiff's

position that DCHA has not overpaid Plaintiff; rather, Plaintiff contends that DCHA, after

receiving credit for its security deposit and $7,000 in prepaid rent, owes Plaintiff in

excess of $500,000 for unpaid real estate taxes, utility charges, late fees and interest,

repairs to the Property and costs incurred by Plaintiff to enforce his rights pursuant to the

Lease.  *See* Pl. Statement of Disputed Facts ¶14.

## IV.    <u>STANDARD OF REVIEW</u>

      Summary judgment is appropriate when the pleadings and the evidence

demonstrate that "there is no genuine issue as to any material fact and that the movant

is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party seeking

summary judgment bears the initial responsibility of demonstrating the absence of a

genuine dispute of material fact.  *See Celotex Corp.* v. *Catrett,* 477 U.S. 317, 323 (1986).

      In determining whether there exists a genuine issue of material fact sufficient to

preclude summary judgment, the court must regard the non-movant's statements as true

and accept all evidence and make all inferences in the non-movant's favor.  *See*

*Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

## V.    <u>ARGUMENT</u>

### A.  <u>Defendant Has Not Established Accord and Satisfaction as a Matter of Law</u>

      Defendant's sole argument in support of its motion for summary judgment as to

Plaintiff's claim for unpaid real estate taxes, utility charges, and applicable late fees and

interest is that the claim is barred by an alleged accord and satisfaction.  *See* Mem. of

Points and Authorities at Section II.A.  The uncontested facts relating to this claim are simple:

- In May 2010, a dispute arose between the parties as to amounts due to Plaintiff for rent and other charges under the Lease.  *See* Def. SMF ¶¶ 9-16 and Exs. D-G.
- In a May 21, 2010 letter, DCHA set forth in detail its position as to what amounts it owed to Plaintiff and what amounts it contested. *See* Def. SMF ¶10 and Ex. D.
- In June 2010, DCHA proffered a check to Plaintiff for the same amount that it had identified in its May 21, 2010 letter as being uncontested.  *See* Def. SMF ¶¶ 11, 14 and Exs. D and F.
- Plaintiff and his attorney met with representatives of DCHA in June 2010 and, at that meeting hand delivered a letter clearly stating his understanding that the check was accepted as a payment on account and that DCHA continued to owe other amounts to Plaintiff.  *See* Def. SMF ¶¶ 15.
- Only after that meeting, on June 11, 2010, Plaintiff cashed the June 2010 check.  *See* Def. SMF 16.
- On June 21, 2010, Ms. Brown, the Associate General Counsel for DCHA, wrote to Plaintiff's counsel and advised that DCHA's General Counsel was reviewing the dispute and what Ms. Brown referred to as Plaintiff's "settlement offer" and would get back to Plaintiff's counsel "shortly."  *See* Pl. SMF ¶5.

Based upon these uncontested facts, Defendant has not established that it is entitled to judgment as a matter of law and, therefore, its motion for summary judgment must be denied.

"Accord and satisfaction is a valid affirmative defense to a breach of contract claim where there is proof of:  (1) a legitimately disputed or unliquidated claim, (2) a mutual agreement that the debtor will pay and the creditor will accept something other than the original amount due in satisfaction of the disputed claim, and (3) the actual giving and taking of the agreed upon substitution."  *Pierola v. Moschonas*, 687 A.2d 942, 947 (D.C. 1997) (citations omitted); *see also Double H Housing Corp. v. David*, 947 A.2d 38, 43 (D.C. 2008); *Saul Subsidiary II Ltd. Partnership v. Venator Group Specialty, Inc.*,

830 A.2d 854 (D.C. 2003); *So v. 514 10th Street Associates, L.P.*, 834 A.2d 910 (D.C.

2003).  "Accord and satisfaction is an affirmative defense. Thus, [Defendant] bears the

burden of proof, and an agreement is not to be presumed."  *ABB Daimler-Benz Transp.*

*(N.A.), Inc.* v. *Nat'l R.R. Passenger Corp.*, 14 F. Supp. 2d 75, 93 (D.D.C. 1998).

For Defendant to prevail on this motion, it must establish, as a matter of law, that

there existed a "mutual agreement [between Plaintiff and DCHA] to accept a sum less

than that demanded."  *Curtis Builders, Inc. v. General Floor Service Co., Inc.*, 107 A.2d

705, 706 (D.C. 1954).  Thus, DCHA must unequivocally establish that (1) DCHA

"intend[ed] the amount paid as a liquidation of plaintiff's claim" and (2) that "plaintiff in

accepting it . . . underst[ood] that it [was] so intended."  *Id.*  DCHA has failed to establish

either element as a matter of law.

1.  DCHA Has Not Established that It Intended its June 2010 Check As a Liquidation of Plaintiff's Claim

The only "fact" DCHA states in support of its contention that it intended its

June 1, 2010 check "as a liquidation of plaintiff's claim" is that "DCHA [sic] intentions

were clear in its May 21, 2010 letter."  *See* Mem. of Points and Authorities at p.15.

Nothing could be further from the truth.  DCHA's unsupported and self-serving

***conclusion*** that the May 21st letter represents a clear expression of the intent to create

a full and final settlement of all amounts due under the lease is not supported by the

facts and is not sufficient to meet its burden on this motion.

For an accord to satisfaction to occur, DCHA must establish that it "clearly

express[ed] [its] intention that [the check was] sent as a settlement in full, and not on

account or in part payment . . ." *Saul Subsidiary*, 830 A.2d at 865.  DCHA does not even

begin to explain how the May 21st letter accomplishes that goal.  In fact, DCHA admits

that its May 21st letter "advised Plaintiff that the total amount due and payable, including all late fees, interest and credits for DCHA overpayments is $65,082.44." *See* Mem. of Points and Authorities at p. 16.  In other words, according to DCHA's own allegations, the May 21st letter acknowledged that it owed Defendant exactly the amount that it later paid Defendant.  *See* Def. SMF ¶¶ 11, 14 and Exs. D and F.  Moreover, the May 21st letter was five pages long and did not mention the term "accord and satisfaction" or the the concept of a "full and final" resolution, and did not request, offer, or even reference a release of existing claims.  *See* Pl. SMF ¶2.  Given these facts, it cannot be determined as a matter of law that the May 21st letter clearly expressed that DCHA, in making a payment of exactly the undisputed amount of $65,082.44, was offering a settlement in full, rather than making a payment on account of undisputed amounts.[6]

Moreover, DCHA fails to address the undisputed facts that clearly show that Defendant never intended the June 1, 2010 check as an offer of full and final settlement. Specifically, it is uncontested that a full ten days after the June 1, 2010 rent check had been cashed, on June 21, 2010, Ms. Brown, the Associate General Counsel for DCHA, wrote to Plaintiff's counsel and advised that DCHA's General Counsel was reviewing the dispute and what Ms. Brown referred to as Plaintiff's "settlement offer" and would get back to Plaintiff's counsel "shortly."  *See* Pl. SMF ¶5.  Clearly, had Defendant regarded its June 1, 2010 check as a binding offer of full and final settlement, it would not have continued to negotiate the dispute with Plaintiff a full ten days after the check was

_____

[6] In addition to the fact that the May 21st letter was far from a clear expression of intent to offer a full and final settlement, it was sent more than two weeks before the June 1, 2010 check was received by Plaintiff and absolutely no reference to the May 21, 2010 letter was included with the check when it was sent.  The June 1, 2010 check bore no notation suggesting that it was offered as payment in full, and it was not accompanied by any letter or other communication that would relay Defendant's intent.  *See* Pl. SMF ¶4. For over 13 years, Defendant had periodically sent checks to Plaintiff as a payment on account and there was nothing unique about the June 1, 2010 check to suggest that it was intended to be any different than the checks previously sent as a payment on account.  *See* Pl. SMF ¶3.

cashed.  But the Defendant did continue to negotiate (*see* Pl. SMF ¶5) and it was not

until months later that Defendant first claimed it had intended its May 21, 2010 letter and

June 1, 2010 check to constitute an offer of full and final settlement.  *See* Pl. SMF ¶6.

These belated assertions are belied by the parties' conduct in June 2010.  The facts

considered as a whole clearly cannot support granting summary judgment in favor of

Defendant.

> 2.  DCHA Has Not Established that Plaintiff Understood He Was Accepting a
> Settlement in Full

Plaintiff denies that he ever understood that, by cashing the June 1, 2010 check,

he was accepting a settlement in full of disputed amounts.  *See* Affidavit of Stanford B.

Weinstein, sworn to June 7, 2012 ("Weinstein Aff."), ECF No. 40, at ¶¶17-20.  Plaintiff's

position is clearly supported by the uncontested facts in the record.  First, as explained

above, at no time did DCHA propose a full accord and satisfaction.  Second, the check

that Plaintiff cashed represented payment of an undisputed amount, and not a penny

more.  *See* Def. SMF ¶11, 14 and Exs. D and F.  There is no evidence that Plaintiff

understood that he was settling his disputed claim for $0 merely by accepting payment of

an undisputed amount.  Third, after Defendant sent its June 1, 2010 check, on June 10,

2010, Plaintiff and his counsel met with DCHA representatives to discuss the amounts

then due.  *See* Def. SMF ¶15.  At that meeting, Plaintiff hand delivered a letter to

Defendant acknowledging receipt of the June 1, 2010 rent check and advising Defendant

that the check was a payment on account and that the account had an outstanding

balance.  *See* Def. SMF ¶15.  This is a clear expression of Plaintiff's understanding and

intent -- that the June 1, 2010 rent check was a payment on account of undisputed

amounts and that the parties would continue to work to resolve their dispute.  It was not

until June 11, 2010, <u>after</u> Plaintiff had clearly expressed his understanding to DCHA, that Plaintiff cashed the June 1, 2010 rent check.  *See* Def. SMF ¶16.

In its motion, DCHA alleges for the first time that, after receiving Plaintiff's June 10, 2010 letter, "DCHA advised Plaintiff that with [sic.] the payment of the $654,082.44, was to settle all lawful amounts owed pursuant to the Lease as outlined in the May 21, 2010 letter."  *See* Mem. of Points and Authorities at p. 17.  DCHA provides no citation for this belated allegation but, in its statement of facts, DCHA provides a citation to the Affidavit of Qwendolyn Brown in support of similar facts.  *See* Mem. of Points and Authorities at p.10.  Plaintiff has moved to strike this inappropriate affidavit and, for the reasons set forth in that motion, the Court should reject this otherwise unsupported allegation.

Moreover, if considered by the Court, this new allegation is not sufficient to constitute a ***material*** fact because it is directly contradicted by both DCHA's 30(b)(6) testimony – by which it is bound – and by the documentary evidence in the record. Specifically, DCHA testified:

Q:  Is it the Agency's position that it's [the May 21, 2010] letter and only this letter that put Mr. Weinstein on notice that if he accepted the check, that was a full accord and satisfaction?
A:  I can't speak to that, only because I know that there were conversations with Mr. Weinstein.
Q:  And what conversations?  When you say you know about it, you don't really know whether there were.  There were, somebody told you that there were?
A:  Yes, that is correct.
Q:  Who told you that there were?
A:  Ms. Lisa Dean.
Q:  Okay.  And what did she tell you?
A:  Only that she'd had conversation with Mr. –
Q:  Right.
A:  -- Weinstein.
Q:  But she never told you that she said to Mr. Weinstein, if you cash that check, it's all over, or words to that effect?

A:  ***There were no words to that effect.***

*See* Transcript of 30(b)(6) Deposition of DCHA (Bonds) 33:16-34:17, ECF No. 40 (emphasis added).   And, Ms. Brown's last minute factual allegation is also directly contradicted by her own contemporaneous email from June 21, 2010 which clearly evidences continuing negotiations with Plaintiff (*see* Pl. SMF ¶5).   DCHA cannot manufacture a material fact with "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). *See also Hastie v. Henderson*, 121 F. Supp. 2d 72, 81 (D.D.C. 2000), *aff'd*, *Hastie v. Potter,* 2001 WL 793715, at *1 (D.C. Cir. June 28, 2001) (finding no genuine issue of material fact where the sole evidence plaintiff provided was "her own self-serving and conclusory statement"); *Hinson ex rel. N.H.* v. *Merritt Educ. Ctr.*, 579 F. Supp. 2d 89, 102 n. 5 (D.D.C. 2008) ("Plaintiff's own unsubstantiated beliefs amount to nothing more than hearsay, self-serving statements and speculation, and are insufficient as such to defeat summary judgment.").   Thus, it is clear that DCHA's new allegation, which is supported only by a self-serving party affidavit and is contradicted by other evidence in the record, is not sufficient to constitute a ***material*** fact that the Court should consider on a motion for summary judgment.

Further, and most saliently in respect of this motion, Defendant's new allegation is contested.  Plaintiff asserts that he reasonably understood the June 1, 2010 check to be a payment on account and that the DCHA representatives at the June 10, 2010 meeting ***never once*** stated or suggested that the June 1, 2010 check was an offer of full and final settlement which, if accepted, would bind Plaintiff to an accord and satisfaction.  *See* Pl.

Statement of Disputed Facts ¶¶1-2.  Plaintiff contends that the DCHA representatives

voiced absolutely no objection or comment and continued the negotiations, advising

Plaintiff that DCHA would respond shortly to what it described as Plaintiff's "settlement

offer."  *See* Pl. Statement of Disputed Facts ¶3.  Thus, if the Court does consider

DCHA's new allegation and determines that the allegation is sufficient to constitute a

material fact, that fact is in dispute and DCHA's motion for summary judgment must be

denied.

      B.     Defendant Has Not Established that It is Entitled to Judgment as a Matter
            of Law as to Amounts Paid by Plaintiff for Repairs to the Property

DCHA asserts that it is entitled to summary judgment as to Plaintiff's claim for

reimbursement of the cost of repairs made to the Property after it was vacated by

DCHA.  DCHA fails to establish that it is entitled to judgment as a matter of law.

Further, DCHA makes a number of allegations, none of which are sufficient to constitute

***material*** facts.  Finally, a number of the allegations asserted by Defendant in this

motion are contested and therefore, if the Court accepts those allegations and

determines that they are sufficient to constitute ***material*** facts, Defendant's motion for

summary judgment must be denied.

In support of its motion, DCHA baldly asserts, without citation to ***any*** evidence,

that:

-  "DCHA did not make substantial alterations to the Property without authorization"
- "DCHA also did not fail to restore the Property or damage the Property"

*See* Mem. of Points and Authorities at p. 17.  Each of these contentions is unsupported

and unsupportable.

First, DCHA cannot in good faith contest that it made substantial alterations to the Property.  Its own documents and testimony establish this fact.  *See* Pl. SMF ¶¶11, 13.  Moreover, there is no evidence to support any contention that Plaintiff authorized any of the alterations.  Rather, Plaintiff denies that DCHA ever requested, or that he granted, authorization (*see* Pl. SMF 12); DCHA has not submitted any evidence whatsoever that authorization was granted; and, the only testimony DCHA provided regarding authorization was that Mr. Nee did not make Plaintiff aware of the changes being made to the Property and had no knowledge of Plaintiff ever being made aware of those changes.  *See* Transcript of Deposition of Joseph Nee, dated November 15, 2011 33:12-21; 56:18-57:3, ECF No. 40;  Transcript of 30(b)(6) Deposition of DCHA (Nee) 35:3-7; 38:7-10, ECF No. 40.

Second, DCHA's unsupported assertion that it did not "fail to restore the Property or damage the Property" is insufficient to constitute a ***material*** fact.  Plaintiff has submitted evidence that, following DCHA's move-out, substantial repairs and replacements were required to restore the building and its systems to good working condition and a clean and sanitary condition.  *See* Pl. SMF ¶¶14-29.  Defendant has not rebutted Plaintiff's evidence and established that it is entitled to judgment as a matter of law.

1.   DCHA's Allegation Relating to the Condition of the Property at the <u>Beginning of the Lease Term Does Not Entitle it to Summary Judgment</u>

In its motion, DCHA alleges that repairs were required at the Property at the beginning of the Lease term.  DCHA offers the Affidavit of Hugh Triggs to support these new allegations.  Plaintiff has moved to strike this inappropriate affidavit and, for the

reasons set forth in Plaintiff's Motion to Strike, the Court should reject these otherwise unsupported allegations.

Moreover, if the Court does consider DCHA's new factual allegations, they are insufficient to constitute *material* facts because they are not relevant to the legal issues presented in this case.  The allegations contained in the Triggs affidavit do not addressed the condition of the Property when it was vacated by DCHA, which is when Plaintiff alleges the actionable breach to have occurred.  The allegations also do not address any of the specific repairs and replacements that Plaintiff asserts were necessary after DCHA vacated the Property.  For example:

- DCHA asserts that during its tenancy it "repaired the offices, and repaired, cleaned and painted the entire Property walls and floors and tiled the office floors."  *See* Mem. of Points and Authorities at p. 20.  It does not, however, address the fact that at the time of move out there were unrepaired holes in the walls and unrepaired damage to the floors, in contravention of DCHA's obligations pursuant to Paragraphs 7 and 9 of the Lease.  *See* Pl. SMF ¶18.

- DCHA asserts that it "put in a new water fountain" during its tenancy.  *See* Mem. of Points and Authorities at p. 20.  It does not, however, address the fact that at the time of move out, DCHA removed the water fountain and did not replace it, in contravention of DCHA's obligations pursuant to Paragraphs 7 and 9 of the Lease.  *See* Pl. SMF ¶ 22.

- DCHA asserts that during its tenancy it "renovated the men's and women's bathrooms".  *See* Mem. of Points and Authorities at p. 20.  It does not, however, address the fact that at the time of move out, it left the bathrooms with damaged and/or missing fixtures and with abandoned exhaust fans it had installed during its tenancy, in contravention of DCHA's obligations pursuant to Paragraphs 7 and 9 of the Lease.  *See* Pl. SMF ¶23.

- DCHA asserts that during its tenancy it "repaired the stairs".  *See* Mem. of Points and Authorities at p. 20.  It does not, however, address the fact that at the time of move out, it removed and did not replace one staircase and left the other stair case with missing nosings, in contravention of DCHA's obligations pursuant to Paragraphs 7 and 9 of the Lease.  *See* Pl. SMF ¶18.

- DCHA asserts that during its tenancy it periodically repaired the overhead doors.  *See* Mem. of Points and Authorities at p. 20.  It does not, however, address the

fact that at the time of move out, the overhead doors were not functioning properly and in need of repair, in contravention of DCHA's obligations pursuant to Paragraphs 7 and 9 of the Lease.   *See* Pl. SMF ¶ 21.

- DCHA asserts that "during Mr. Triggs' occupancy, DCHA repaired the roof and any leaks to the roof as needed."   *See* Mem. of Points and Authorities at p. 20.  It does not, however, address the fact that at the time of move out, the roof had leaks, there were missing flashing and gutters and the roof was otherwise in need of repair, in contravention of DCHA's obligations pursuant to Paragraphs 7 and 9 of the Lease.  *See* Pl. SMF ¶28.

Further, by DCHA's own admission, it removed only "most" of the "improvements" it made to the Property (*see* Mem. of Points and Authorities at pp. 19, 21, 22), contrary to its obligation under the Lease.  The allegations contained in Mr. Triggs' affidavit are, thus, nothing more than a red herring and these new allegations are not sufficient to constitute ***material*** facts that the Court should consider on a motion for summary judgment.

Defendant's motion must also be denied because the allegations set forth in Mr. Triggs' affidavit are contested.  Plaintiff specifically disputes these allegations and asserts that prior to DCHA taking possession of the property in 1997, Plaintiff visited the property with DCHA representatives multiple times.  *See* Pl. Statement of Disputed Facts ¶4.  During those visits, DCHA representatives inspected the condition of the property to determine whether it was appropriate to meet their needs.  *See* Pl. Statement of Disputed Facts ¶4.  As a result of those inspections, DCHA requested that Plaintiff make certain alterations to the property prior to their taking possession of the property.  *See* Pl. Statement of Disputed Facts ¶4.  Those specific requested alterations were outlined in an addendum to the lease entered into between Plaintiff and DCHA on October 17, 1997. *See* Pl. Statement of Disputed Facts ¶4.

Plaintiff further contends that, in the October 17, 1997 lease addendum, Plaintiff agreed to (a) install floor tiles in the lower level reception area and in the front two offices on the main level of the warehouse; (b) remove that part of the mezzanine level observation deck which extends into the main work area; and, (c) ensure that the air conditioning system was fully operational.  *See* Pl. Statement of Disputed Facts ¶5. Plaintiff completed each of these tasks at his own expense prior to DCHA taking possession of the property.  *See* Pl. Statement of Disputed Facts ¶5.  No other alterations, modifications, repairs, or replacements were ever requested by DCHA. *See* Pl. Statement of Disputed Facts ¶5.  When DCHA took possession of the property, DCHA did not notify Plaintiff of any problem with the condition of the property or any of its systems or fixtures.  DCHA also did not notify Plaintiff of any need to make any repairs or that any element of the property was "unusable".  *See* Pl. Statement of Disputed Facts ¶5.  Finally, Plaintiff asserts that when DCHA took possession, the property was in good condition and its systems were in good working order.  Specifically,

j.  The property was clean and broom swept;
k.  The floors and walls of the warehouse and offices did not have holes, leaks or otherwise require repair;
l.  The bathrooms were in good working condition, had toilet paper and soap dispensers and did not require repair;
m.  The stairs had nosings in place and did not require repair;
n.  The overhead garage doors were in good working condition and did not require repair;
o.  The water fountain was in good working condition and did not require repair;
p.  The roof was free of leaks, in good working condition, had all gutters and flashing in place, and did not require repair;
q.  The HVAC system was operating, properly maintained, in good working condition and did not require repair;
r.  The electrical system was in good working condition and did not require repair.

*See* Pl. Statement of Disputed Facts ¶6.  Thus, even if the Court were to consider DCHA's new allegations and determine that these allegations are sufficient to constitute

material facts, those facts are in dispute and DCHA's motion should, therefore, be denied.

2.   DCHA's Allegation That Plaintiff "Did Not Complain" During DCHA's Tenancy Does Not Entitle it to Summary Judgment

DCHA also asserts that Plaintiff "did not complain" about the condition of the Property prior to DCHA's move-out.  *See* Mem. of Points and Authorities at p.22.  DCHA does not even attempt to articulate a viable legal theory that would support a finding that summary judgment is therefore warranted in its favor.  In fact, whether Plaintiff was aware of the condition of the Property and/or whether he "complained" about the condition of the Property during the course of DCHA's tenancy, is entirely irrelevant. Plaintiff's breach of contract claim relates to the condition of the Property <u>at the time of DCHA's move-out</u>.  Plaintiff had no obligation, and no opportunity, to discover and/or "complain" about DCHA's failure to maintain the Property during the course of the Lease, nor could Plaintiff have "complained" about DCHA's failure to remove its alterations before it vacated the Property.  DCHA is obligated to comply with all of the terms of the Lease and it is not relieved of any such obligation -- whether or not Plaintiff "complained" about the breach during DCHA's tenancy.  Thus, this allegation is not sufficient to constitute a ***material*** fact that the Court should consider on a motion for summary judgment. [7]

---

[7] Moreover, DCHA's allegations are not sufficient to constitute ***material*** facts because the only evidence that DCHA offers to support its contention that Defendant was aware of the alterations it made to the Property before June 2010 is the speculative testimony of Joseph Nee.  Mr. Nee testified that Plaintiff visited the outside of the Property and never came inside.  *See* Nee Tr. 67:15-68:6.  Mr. Nee further testified that he believed Plaintiff could see into the Property well enough to be aware of the alterations DCHA had made.  *See* Nee Tr. 139:14-140:21.  Plaintiff denies that when he visited the outside of the Property he could see inside and denies that he was aware of the alterations DCHA made to the Property. *See* Pl. Statement of Disputed Facts ¶¶7-9.  Moreover, DCHA offers no evidence at all, and never even suggests, that Plaintiff could have had any knowledge of the condition of the electrical, plumbing, or HVAC

Moreover, whether Plaintiff was aware of the condition of the Property during the course of DCHA's tenancy (and therefore capable of "complaining") is a contested fact. Plaintiff's position is that after DCHA took possession of the Property in 1997, Plaintiff did not enter the Property again until the Spring of 2010. *See* Pl. Statement of Disputed Facts ¶7. From time to time during the course of DCHA's tenancy, Plaintiff passed by the Property and observed it from the outside. On a handful of occasions, a DCHA representative was outside the Property and Plaintiff would stop and speak with those representatives while observing the Property from the outside. *See* Pl. Statement of Disputed Facts ¶8. However, Plaintiff was not aware of the substantial alterations that DCHA had performed at the Property before Plaintiff entered the Property in the Spring of 2010. When Plaintiff observed the Property from the outside during DCHA's tenancy, Plaintiff could not see into the Property to observe the substantial alterations. *See* Pl. Statement of Disputed Facts ¶9. Thus, even if the Court determines that DCHA's allegation is sufficient to constitute a material fact, that fact is contested and DCHA's motion should be denied.

   3.   DCHA's Allegation Relating to the Timing of Repairs Does Not Entitle it to Summary Judgment

DCHA also asserts that "Plaintiff, however, waited several months [after DCHA vacated the Property] before he had work done on his Property." *See* Mem. of Points and Authorities at p.22. This allegation is not sufficient to constitute a ***material*** fact because it is irrelevant to the legal issues presented in this case. Whatever the timing of

---

systems, the condition of the roof, or any of the other specific damage that Plaintiff now seeks reimbursement for. This is not sufficient to establish **material** facts that a Court should consider on a motion for summary judgment. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). *See also Hastie v. Henderson*, 121 F. Supp. 2d 72, 81 (D.D.C. 2000), *aff'd, Hastie v. Potter,* 2001 WL 793715, at *1 (D.C. Cir. June 28, 2001); *Hinson ex rel. N.H.* v. *Merritt Educ. Ctr.*, 579 F. Supp. 2d 89, 102 n. 5 (D.D.C. 2008).

the repairs, DCHA has offered absolutely no evidence to support its contention that any damage was done to the Property between the time it vacated the Property on June 30, 2010 and the time that the repairs were performed.  This allegation is also not sufficient to constitute a ***material*** fact because DCHA cites no evidence to support this new factual allegation and, in fact, the evidence presented clearly disproves the allegation.  As DCHA concedes, it vacated the Property on June 30, 2010.  *See* Pl. SMF ¶7.  Plaintiff hired Pizzano General Contractors, Inc. to perform repairs at the Property within a matter of days.  *See* Affidavit of Samuel Silverman, sworn to June 7, 2012, ECF No. 40 ¶4 ("In July 2010, Weinstein contacted me…") and Ex. 1 (email dated <u>July 7, 2010</u> from Stanford B. Weinstein to Michael Royce and Samuel Silverman ("Sam will be working to bring the building back to the same condition it was in prior to the DC Housing Authority's tenancy").  This allegation is, therefore, not sufficient to constitute a ***material*** fact that the Court should consider on a motion for summary judgment.

Moreover, this allegation is contested.  It is Plaintiff's position that Pizzano General Contractors, Inc. was hired to perform repairs at the Property within a matter of days of DCHA vacating the Property.    *See* Pl. Statement of Disputed Facts ¶10.  Thus, even if the Court determines that this allegation is sufficient to constitute a material fact, the fact is contested and, therefore, DCHA's motion should be denied.

4.   DCHA's Allegation Relating to "Life Expectancy" Does Not Entitle it to <u>Summary Judgment</u>

DCHA also asserts that "most of the Property fixtures, equipment, furnishing and roofing has a life expectancy and will deteriorate over time."  *See* Mem. of Points and Authorities at p.23.  This allegation is not sufficient to constitute a ***material*** fact because again, DCHA offers no citation to evidence to support its factual allegations.  More

importantly, this fact is entirely irrelevant and, therefore, does not constitute a ***material***

fact.  First, tt was DCHA's express obligation under the terms of the Lease to "make all

repairs and replacements necessary to keep both the interior and exterior of the

Demised Premises and the fixtures and equipment therein in good repair and in property

sanitary condition", to "maintain the heating and plumbing systems in good operating

condition at all times", and to "keep the interior and exterior of the Demised Premises in

a clean, neat, orderly and attractive condition at all times."  *See* Pl. SMF ¶10.   Allowing

the Property, its systems and fixtures to "deteriorate over time" is a clear breach of those

obligations which are in no way qualified by the concept of "ordinary wear and tear".  It is

the breach of those obligations that Plaintiff now seeks to remedy and the question of

"life expectancy" is, therefore, completely irrelevant. Moreover, even if the concept of "life

expectancy" were relevant, DCHA has made absolutely no attempt to establish, and

Plaintiff therefore disputes that DCHA has established, what the life expectancy of the

Property or its systems is.  This allegation is, therefore, not sufficient to constitute a

***material*** fact that the Court should consider on a motion for summary judgment and is

also disputed.  DCHA's motion should, therefore, be denied.

> 5.  DCHA's Allegation Relating to "Legally Required" Repairs Does Not Entitle it to Summary Judgment

Finally, DCHA asserts that "Plaintiff also seeks compensation for the renovation

that Plaintiff is legally required to do when leasing to a new tenants [sic]."  This allegation

is not sufficient to constitute a ***material*** fact because again DCHA has offered no citation

to any evidence to support its allegation.  Moreover, this allegation is a legal conclusion

for which DCHA offers no support.  Plaintiff is aware of no legal obligation to perform any

"renovation" before leasing to a new tenant and DCHA articulates none.  DCHA fails to

address with specificity how Plaintiff was "legally required' to perform any of these repairs and DCHA's unexplained reference to building codes does nothing to disprove Plaintiff's allegations or to support granting summary judgment in favor of DCHA.  This allegation is, therefore, not sufficient to constitute a ***material*** fact that the Court should consider on a motion for summary judgment.

Moreover, this new allegation is not uncontested.  It is Plaintiff's position that after DCHA vacated the Property, Pizzano General Contractors, Inc. ("Pizzano") and Virginia Roofing Corporation were hired to make necessary repairs and replacements to the Property.  *See* Pl. SMF ¶¶14, 25.  The contractors were instructed to make those repairs and replacements necessary to restore the building to its original warehouse condition and not to make any upgrades to the Property.  *See* Pl. SMF ¶¶15, 16, 26.  The contractors were not instructed to "bring the Property up to code" or to make any renovations that Plaintiff was "legally required to do".  *See* Pl. Statement of Disputed Facts ¶11. Plaintiff also denies that he was legally required to make any renovations to the Property or that he applied for or received a building permit relating to the Property after DCHA vacated. *See* Pl. Statement of Disputed Facts ¶13. Thus, even if the Court determines that this allegation is sufficient to constitute a material fact, the fact is contested and DCHA's motion should, therefore, be denied.

C.    DCHA Has Not Established That It Is Entitled to Judgment as a Matter of Law As to Costs Incurred to Enforce the Terms of the Lease

Pursuant to the unambiguous terms of the Lease, DCHA is "obligated to pay for all reasonable fees and expenses (including court costs and attorneys' fees) incurred by Landlord in enforcing the provisions of this Lease."  *See* Pl. SMF ¶30.  Plaintiff retained the services of Shapiro, Lifschitz and Schram, P.C. to provide legal representation

27

relating to the termination of the Lease by DCHA and the issues raised in this litigation,

in order to enforce Plaintiff's rights pursuant to the terms of the Lease.  *See* Pl. SMF ¶31.

Plaintiff has, and continues, to pay for the services of Shapiro, Lifschitz and Schram,

P.C. as invoiced.  *See* Pl. SMF ¶32.  DCHA does not contest these facts.  DCHA moves

for summary judgment as to Plaintiff's claim for attorneys' fees and costs based solely on

its contention that "Plaintiff fails to establish a breach of contract claim".  For all of the

reasons set forth herein, DCHA has not established as a matter of law that a breach did

not occur.  Thus, DCHA has not established as a matter of law that it is entitled to

summary judgment as to this claim.

### D. DCHA Has Not Established That It Is Entitled to Judgment as a Matter of Law As to Alleged "Overpayments"

DCHA seeks "in the alternative" summary judgment on its Counterclaim for

alleged "overpayments" to Plaintiff during the course of its tenancy.  In support of its

motion for summary judgment, DCHA states:

> "A review of the payments made to Plaintiff has established that DCHA overpaid
> Plaintiff in [sic] as follows:
> e.   DCHA paid an $8,000 security deposit.
> f.   DCHA overpaid Plaintiff in the amount of $16,764.70 in Office and [sic] Tax
>      and Revenue penalties and interest.
> g.   DCHA overpaid Plaintiff in the amount of $1,615.60 in penalties and interest.
> h.   DCHA overpaid Plaintiff in the amount of $7,000 in base rent."

*See* Mem. of Points and Authorities at p. 25.  This is DCHA's entire "argument" in favor

of summary judgment.  DCHA cites solely to the Affidavit of Ralph Staley to support this

"argument".  *See id.*  Mr. Staley's affidavit states that "As part of my review of the

records, I determined" that the alleged overpayments listed by DCHA occurred.  *See*

Staley Aff. ¶6.  Mr. Staley provides no documentary support for this contention, nor does

he provide any calculation or other explanation of how he "determined" that these

overpayments occurred.  *See id.*  DCHA has the burden of proof as to its Counterclaim and it is has offered not one shred of evidence that any "overpayment" ever occurred other than the conclusory, self-serving affidavit of Mr. Staley.  Its motion for summary judgment should be flatly rejected for that reason alone.

Moreover, Plaintiff denies that DCHA has overpaid Plaintiff; rather, Plaintiff contends that DCHA, after receiving credit for its security deposit and $7,000 in prepaid rent, owes Plaintiff in excess of $500,000 for unpaid real estate taxes, utility charges, late fees and interest, repairs to the Property and costs incurred by Plaintiff to enforce his rights pursuant to the Lease.  *See* Pl. Statement of Disputed Facts ¶14.  Thus, DCHA has failed to establish that there are no material facts in dispute or that it is entitled to judgment as a matter of law in respect of its Counterclaim.  DCHA's motion should, therefore, be denied.

**CONCLUSION**

For all of the reasons set forth herein, Defendant has failed to establish that it is entitled to judgment as a matter of law in respect of any of Plaintiff's claims or its Counterclaim.  This motion should, therefore, be denied in its entirety.

Dated:        July 10, 2012

Respectfully submitted,


/s/ Judah Lifschitz

Judah Lifschitz, Esq.  (DC Bar No. 963330)
Laura Fraher, Esq. (DC Bar No. 979720)
SHAPIRO LIFSCHITZ & SCHRAM, P.C.
1742 N Street, NW
Washington, DC  20036
(202) 689-1900 (telephone)
(202) 689-1901 (facsimile)
Lifschitz@slslaw.com
Fraher@slslaw.com

*Attorneys for Plaintiff Stanford Weinstein*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____ )
Stanford B. Weinstein,                                               )
                                                                                )     Case No. 1:10-cv-01768
                                                                                )     Judge Contreras
                                    Plaintiff,                               )
                                                                                )
                        v.                                                     )
                                                                                )
District of Columbia Housing Authority,                    )
                                                                                )
                                    Defendant.                          )
_____ )

## PLAINTIFF STANFORD B. WEINSTEIN'S RESPONSE TO DEFENDANT DISTRICT OF COLUMBIA HOUSING AUTHORITY'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

Plaintiff Stanford B. Weinstein ("Weinstein" or "Plaintiff") hereby responds to the numbered paragraphs of the Defendant District of Columbia Housing Authority's ("DCHA" or "Defendant") Statement of Undisputed Facts, as follows:

1.      Admitted.

2.      Admitted.

3.      Plaintiff denies that he was served with the "Notice of Nonrenewal" on December

1, 2009.  Plaintiff admits that he received the letter attached as Exhibit C to Defendant's

Statement of Material Facts as to Which There is No Genuine Issue ("Def. SMF"), by

Federal Express and not by mail, on January 20, 2010.

**<u>Citation</u>:**

- Def. SMF ¶8 and Ex. E;
- Lease, annexed as Exhibit A to Def. SMF, at ¶21;
- Affidavit of Stanford B. Weinstein, sworn to June 6, 2012 ("Weinstein Aff.") ¶12 and Exs. 33-35, ECF No. 40;
- Transcript of Deposition of Stanford B. Weinstein ("Weinstein Tr.") dated Nov. 10, 2011, 28:6-8, ECF No. 40.

4.      Plaintiff is without sufficient information to either admit or deny that Defendant

mailed its Notice of Nonrenewal to Plaintiff's address of record and, therefore, denies

same.   Plaintiff admits that he received the letter attached as Exhibit C to Def. SMF, by

Federal Express and not by mail, on January 20, 2010.

**<u>Citation</u>:**

- Def. SMF ¶8 and Ex. E;
- Weinstein Aff. ¶ 12 and Exs. 33-35;
- Weinstein Tr. 28:6-8.

5.      Plaintiff is without sufficient information to either admit or deny the contents of

Defendant's records and, therefore, denies same.   Plaintiff admits that he received rent

checks from Defendant at his address of record.

6.      Plaintiff admits that he received the letter attached as Exhibit C to Def. SMF, by

Federal Express and not by mail, on January 20, 2010.  That letter is in writing and is

the best evidence of its contents and any allegations at variance with it are denied.

2

7.      Plaintiff is without sufficient information to either admit or deny that an email dated December 2, 2009 was sent to Plaintiff from Defendant and, therefore, denies same.  Plaintiff notes that Exhibit D to Def. SMF, which is referenced in this paragraph, is a letter dated May 21, 2010 from Defendant to Plaintiff, not an email dated December 2, 2009 and no such email is attached.  Plaintiff specifically denies that, if the email described in this paragraph was sent, it would constitute valid notice under the Lease.

**<u>Citation</u>:**

• Lease, attached as Exhibit A to Def. SMF, at ¶21.

8.       Plaintiff admits that he received the letter attached as Exhibit C to Def. SMF, by Federal Express and not by mail, on January 20, 2010.  Plaintiff admits that he sent the letter attached as Exhibit E to Def. SMF to Defendant on April 30, 2010.  Both letters are in writing and are the best evidence of their contents and any allegations at variance with the contents are denied.

9.      Plaintiff admits that he sent the letter attached as Exhibit E to Def. SMF to Defendant on April 30, 2010.  That letter is in writing and is the best evidence of its contents and any allegations at variance with it are denied.

10.      Plaintiff admits that he received the letter dated May 21, 2010, attached as Exhibit D to Def. SMF.  That letter is in writing and is the best evidence of its contents and any allegations at variance with it are denied.

11.     Plaintiff admits that he received the letter dated May 21, 2010, attached as Exhibit D to Def. SMF.  That letter is in writing and is the best evidence of its contents and any allegations at variance with it are denied.  Plaintiff specifically denies that the May 21, 2010 letter was a "settlement letter" and denies that he understood it to be a "settlement letter."

**<u>Citation</u>:**

- Weinstein Aff. ¶¶15-16.

12.     Plaintiff admits that he received the letter dated May 21, 2010, attached as Exhibit D to Def. SMF.  That letter is in writing and is the best evidence of its contents and any allegations at variance with it are denied.

13.     Plaintiff admits that he received the letter dated May 21, 2010, attached as Exhibit D to Def. SMF.  That letter is in writing and is the best evidence of its contents and any allegations at variance with it are denied.

14.     Plaintiff admits that he received Check Number 299204, dated June 1, 2010, attached as Exhibit F to Def. SMF from Defendant.  Plaintiff denies that the check was mailed "[p]ursuant to [Defendant's] May 21, 2010 settlement letter," denies that the May 21, 2010 letter was a "settlement letter," and denies that he understood it to be a "settlement letter."

**<u>Citation</u>:**

- Weinstein Aff. ¶¶15-16.

15.     Plaintiff admits that that the letter attached as Exhibit G to Def. SMF was hand

delivered to Defendant on June 10, 2010 at a meeting to discuss the amounts then due

and other matters relating to the Lease.  That letter is in writing and is the best evidence

of its contents and any allegations at variance with it are denied.

16.     Plaintiff admits that he deposited Check Number 299204, dated June 1, 2010,

attached as Exhibit F to Def. SMF on June 11, 2010, after discussing his June 10, 2010

letter with Lisa Dean and Qwendolyn N. Brown of DCHA at the June 10, 2010 meeting.

Plaintiff denies that the check was a "settlement check."

**Citation:**

- Weinstein Aff. ¶¶17-20.

17.     Denied.

**Citation:**

- Affidavit of Stanford B. Weinstein, sworn to July 9, 2012 ("Weinstein July 2012 Aff."), ¶12;
- Appendix A to Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment , ECF No. 40.

18.     Denied.

**Citation**:

- Weinstein July 2012 Aff., ¶¶7-9.

**PLAINTIFF STANFORD B. WEINSTEIN'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN OPPOSITION TO DEFENDANT DISTRICT OF COLUMBIA HOUSING AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Stanford B. Weinstein ("Weinstein" or "Plaintiff") submits the following Statement of Material Facts Not in Dispute, in Opposition to Defendant District of Columbia Housing Authority's ("DCHA" or "Defendant") Motion for Summary Judgment:

1.      During all times relevant to the issues in this proceeding, Plaintiff was the owner of certain real property located in the District of Columbia identified as Lot 839 in Square 672 with the improvements thereon, known as 16 M Street, NE and an adjacent parking lot known as Lot 251 in Square 672, in the District of Columbia (the "Property").

**Citation:**

- Defendant's Counterclaim ¶ 5, ECF No. 27;
- Affidavit of Stanford B. Weinstein, sworn to June 6, 2012 ("Weinstein Aff.") ¶ 2, ECF No. 40.

2.      DCHA's May 21, 2010 letter was five pages long.  In its five-page letter, Defendant did not mention the term "accord and satisfaction," it did not mention the concept of a "full and final" resolution, and it did not request, offer, or even reference a release of the then existing claims of the parties.

**Citation:**

- Weinstein Aff. ¶ 15 and Ex. 37.

3.      It was DCHA's standard practice under this Lease for more than 12 years to periodically send checks as payment on account.

**Citation:**

- Weinstein Aff. ¶ 18;
- Appendix A to Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Appendix A") Exs. 4-15, ECF No. 40.

4.      The June 1, 2010 check did not bear any notation, was not accompanied by any

cover letter, and did not include any restrictive endorsement to indicate that it was being

tendered as an offer of full and final settlement rather than as a payment on account.

**Citation:**

- Defendant's Responses to Plaintiff Stanford B. Weinstein's First Set of Requests for Admission to Defendant District of Columbia Housing Authority  ("Def. RFA") No.1, ECF No. 40;
- Weinstein Aff. ¶ 19 and Ex. 38.

5.      On June 21, 2010, Ms. Brown, the Associate General Counsel for DCHA, wrote

to Plaintiff's counsel and advised that DCHA's General Counsel was reviewing the

dispute and what Ms. Brown referred to as Plaintiff's  "settlement offer" and that DCHA

would get back to Plaintiff's counsel "shortly."

**Citation:**

- Weinstein Aff. ¶ 25 and Ex. 40.

6.      In its motion to dismiss filed in November 2010, DCHA for the first time asserted

its contention that the June 1, 2010 check was intended as an offer of a full and final

settlement.

**Citation:**

- Defendant's Motion to Dismiss or, In the Alternative, for Summary Judgment, ECF No. 3.

7.      Defendant remained in possession of the Property and did not vacate until on or

about June 30, 2010.

**Citation:**

- Def. RFA No. 9;
- Defendant's Answers to Plaintiff's First Set of Interrogatories to Defendant District of Columbia Housing Authority ("Def. First Interrogatories") No. 5, ECF No. 40;
- Weinstein Aff. ¶ 27;

7

8.      The Lease provides that "[i]n the event any damage is done to said premises in the installation or removal of said furniture, fixtures and equipment, Tenant shall, at its cost and expense, restore said premises to their original condition, or promptly reimburse Landlord for all such costs."

**Citation:**

• Weinstein Aff. Ex. 1 at ¶ 7(b).

9.      The Lease provides that if Tenant failed to remove any such material at the end of its tenancy, and Plaintiff disposed of those materials, "Tenant shall promptly reimburse Landlord for all such costs of removal and disposal."

**Citation:**

• Weinstein Aff. Ex. 1 at ¶ 7(b).

10.     The Lease also requires that "Tenant shall, at its risk, cost and expense, make all repairs and replacements necessary to keep both the interior and exterior of the Demised Premises and the fixtures and equipment therein in good repair and in property sanitary condition. . . .  Tenant shall, at its cost and expense, furnish heat to said premises. . . and shall maintain the heating and plumbing systems in good operating condition at all times. . . .Tenant shall keep the interior and exterior of the Demised Premises in a clean, neat, orderly and attractive condition at all times."

 **Citation:**

• Weinstein Aff. Ex. 1 at ¶ 9.

11.     During its tenancy, DCHA made substantial alterations to the Property.

**Citation:**

- Def. RFA No. 36;
- Weinstein Aff. ¶ 28 and Exs. 41-42;
- Transcript of Deposition of Stanford B. Weinstein ("Weinstein Tr.") dated Nov. 10, 2011, 33:9-34:10; 35:17-25; 36:2-23, ECF No. 40.
- Transcript of Deposition of Joseph Nee dated November 15, 2011 ("Nee Tr.") 37:15-48:22, ECF No. 40

12.     Defendant never requested, and Plaintiff never provided, written consent for any

of the alterations.

**Citation:**

- Weinstein Aff. ¶ 30;
- Weinstein Tr. 48:6-8; 53:7-54:8.

13.     The alterations to the building included, *inter alia*:

  a.     Installing a locker room, which included new walls embedded to the existing warehouse floor, new flooring, and new lighting
  b.     Installing a locker room, which included new walls embedded to the existing warehouse floor, new flooring, and new lighting;
  c.     Installing a kitchen, which included installing new plumbing;
  d.     Installing office space, which included installing new walls which were embedded into the floor of the warehouse, new flooring, and new wiring; and, installing a chain link fence in the interior of the warehouse, which included embedding concrete posts and large bolts into the warehouse floor.

**Citation:**

- Weinstein Aff. Exs. 41-42.
- Nee Tr. 37:15-48:22.

14.     In July 2010, Plaintiff retained Pizzano General Contractors, Inc. ("Pizzano") to

make necessary repairs and replacements to the Property after it was vacated by

DCHA.

**Citation**:

- Weinstein Aff.  ¶ 31;
- Affidavit of Samuel Silverman, sworn to on June 7, 2012 (Silverman Aff.) ¶5, ECF
  No. 40.

15.     Pizzano was instructed to make repairs and replacements necessary to restore

the building to its original warehouse condition to return the Property and its systems to

a condition of good repair and working, sanitary condition.

**Citation**:

- Weinstein Aff.  ¶ 31;
- Silverman Aff. ¶ 6 and Exs. 1-2.

16.     Pizzano was instructed not to make any upgrades to the Property.

**Citation**:

- Weinstein Aff.  ¶ 31;
- Silverman Aff. ¶ 6 and Exs. 1-2.

17.     Samuel Silverman, the Pizzano Project Manager who oversaw the repairs and

replacements performed at the Property after it was vacated by DCHA, was personally

familiar with the condition of the Property immediately prior to DCHA's tenancy.  He

determined that a number of repairs and replacements were necessary to restore the

building to its original warehouse condition and to restore the Property and its systems

to good repair and proper working, sanitary condition.

**Citation**:

- Silverman Aff. ¶¶ 7-21, Exs. 3-26.

18.     Specifically, Pizzano performed the following work:

   a.     Removal of weeds, overgrowth and debris in parking lot
   b.     Furnish and install new fire extinguishers, existing extinguishers were out
          of date
   c.     Replaced two broken rear exit doors and hardware
   d.     Furnish and install toilet paper and soap dispensers, existing dispensers
          were missing
   e.     Replace damaged and stained ceiling tiles in offices
   f.     Replaced damaged or missing wall insulation along main wall in
          warehouse
   g.     Removed fence posts and bolts from floor
   h.     Furnish and install new vct floor and base in entry and offices
   i.     Furnish and install new stairs leading from loading dock to warehouse
   j.     Seal up existing window in rear of building
   k.     Removed debris left on existing duct work and above office ceilings
   l.     Patch and repair holes in walls in offices and bathrooms, prep and pain
          walls and ceilings
   m.     Removed abandon tele/data wiring hanging from ductwork
   n.     Removed miscellaneous debris from warehouse
   o.     Furnish and install new stair nosings on stairs at entry, nosing were
          missing from stairs
   p.     Removed skim coat of concrete from warehouse floor
   q.     Prep and pain warehouse wall

**<u>Citation</u>:**

- Silverman Aff. ¶23-24 and Ex. 13.

19.     Pizzano also hired subcontractors to perform repairs and replacements to the

HVAC system, the electrical systems, the overhead doors, and to replace a water cooler

that had been removed by DCHA.

**<u>Citation</u>:**

- Silverman Aff. ¶¶ 9-19.

20.    Subcontractor HVAC Precision Services, Inc. performed the following work:

    a.    Remove refrigerant lines that had been installed and run through the skylights of the Property
    b.    Seal bad patches inside duct work
    c.    Replace dry rotted belt on roof top exhaust fan
    d.    Remove exhaust fans and accompanying wiring that had been installed in the bathroom to replace the damaged roof top exhaust fan
    e.    Repair the roof top air conditioning unit (repair refrigerant leak, recharge unit and replace fan motor)
    f.    Replace missing belt inside air handling unit and clean and service the unit
    g.    Replace broken kitchen wall heater
    h.    Install missing thermostat and replace fan motor on the back left gas heater
    i.    Replace damaged front two gas heaters
    j.    Repair front through-the-wall heat pump motor

**Citation**:

• Silverman Aff. ¶10-11 and Exs. 5 and 6.

21.    Subcontractor Overhead Door Co. of Washington DC performed the following

work:

    a.    Reattach the steel supports on the front overhead door
    b.    Remove and replace damaged door track on rolling door number 3
    c.    Remove and replace damaged door track and one slide lock on rolling door number 4
    d.    Furnish and install door limits on all four roll up doors, all of which were broken or missing
    e.    Replace missing pull ropes from all doors
    f.    Balance and apply lubricant to all doors

**Citation**:

• Silverman Aff. ¶¶ 13-14 and Exs. 7 and 8.

22.    Subcontractor Nutwell Plumbing & Heating replaced the missing water cooler.

**Citation**:

• Silverman Aff. ¶ 16 and Ex. 9.

23.    Subcontractor W&W Electric Co., Inc performed the following work:

    a.    Remove non working lamps and install replacements in office areas
    b.    Replace fixtures in bathrooms which were missing lenses
    c.    Remove and replace non-functioning emergency exit lights
    d.    Remove abandoned wiring throughout Property
    e.    Remove outlets that had been added
    f.    Repair outlets that were missing parts
    g.    Replace non functioning lamps and ballast in loading dock area
    h.    Replace damaged fluorescent fixtures throughout warehouse
    i.    Removed broken fixtures from side walls of loading dock
    j.    Removed non working fixtures and replace with new lamps in loading dock area
    k.    Survey electrical panels to ensure working condition and check and verify condition of all exterior lighting
    l.    Install missing cover plates throughout Property

**Citation**:

- Silverman Aff. ¶ 18-19 and Exs. 10 and 11.

24.    Plaintiff paid $56,125.00 for the work of Pizzano, including work performed by subcontractors.

**Citation**:

- Weinstein Aff.  ¶ 31 and Ex. 43;
- Silverman Aff. ¶ 38 and Ex. 27.

25.    Plaintiff retained Virginia Roofing Corporation ("Virginia Roofing") to make repairs necessary to the roof of the Property after it was vacated by DCHA.

**Citation**:

- Weinstein Aff. ¶ 32;
- Silverman Aff. ¶¶ 21-22 and Ex. 12.

26.     Virginia Roofing was instructed to make necessary repairs to restore the

condition of the roof to be free of leaks and missing or damaged areas of roofing

material (including flashing and gutters), and not to make any upgrades to the roof of

the Property.

**<u>Citation</u>:**

- Weinstein Aff. ¶ 32.

27.     Virginia Roofing determined that a number of repairs and replacements were

necessary to restore the roof of the building.

**<u>Citation</u>:**

- Weinstein Aff. ¶ 33 and Exs. 44-45.

28.     Virginia Roofing performed the following work:

     a.    Remove deteriorated plywood from 4 skylight covers/curbs and haul away
     b.    Furnish and install new ½" plywood over existing skylight covers/curbs to replace deteriorated
     c.    Fully adhere 060 EPDM (rubber) membrane over new plywood
     d.    At gravel-stop, furnish and install 2 ply roof cement and fabric
     e.    Re-attach gutter and gutter hangers as needed
     f.    Al all gutter seams furnish and install 1 ply roof cement and fabric
     g.    Furnish and install one hundred forty linear feet of shop formed coping to replace damaged/missing
     h.    Remove one deteriorated roof plate and haul away
     i.    Furnish and install new roof plate to replace deteriorated
     j.    Re-flash three doghouses with roof cement and fabric
     k.    Furnish and install one ply aluminum roof coating over all repairs

**<u>Citation</u>:**

- Weinstein Aff. ¶ 33 and Exs. 44-45.

29.     Plaintiff paid $10,460 for the work of Virginia Roofing.

**<u>Citation</u>:**

- Weinstein Aff. ¶ 33 and Exs. 44-45.

30.     The Lease provides that DCHA is "obligated to pay for all reasonable fees and expenses (including court costs and attorneys' fees) incurred by Landlord in enforcing the provisions of this Lease."

**Citation**:

*   Weinstein Aff. Ex. 1 at ¶ 15(b).

31.     Plaintiff retained the services of Shapiro, Lifschitz and Schram, P.C. to provide legal representation relating to the termination of the Lease by DCHA and the issues raised in this litigation in order to enforce Plaintiff's rights pursuant to the terms of the Lease.

**Citation**:

*   Weinstein Aff. ¶ 34.

32.     Plaintiff has, and continues, to pay for the services of Shapiro, Lifschitz and Schram, P.C. as invoiced.

**Citation**:

*   Weinstein Aff. ¶ 34;
*   Appendix A Exs. 45-58.

**PLAINTIFF STANFORD B. WEINSTEIN'S STATEMENT OF MATERIAL FACTS
THAT ARE IN DISPUTE IN OPPOSITION TO DEFENDANT DISTRICT OF
COLUMBIA HOUSING AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Stanford B. Weinstein ("Weinstein" or "Plaintiff") submits the following

Statement of Material Facts That Are in Dispute in Opposition to Defendant District of

Columbia Housing Authority's ("DCHA" or "Defendant") Motion for Summary Judgment:

1.      Plaintiff reasonably understood the June 1, 2010 check to be a payment on

account.

**Citation:**

- Affidavit of Stanford B. Weinstein, sworn to June 6, 2012 ("Weinstein Aff.") ¶20, ECF
  No. 40.

2.       The DCHA representatives at the June 10, 2010 meeting never once stated or

suggested that the June 1, 2010 check was an offer of full and final settlement which, if

accepted, would bind Plaintiff to an accord and satisfaction.

**Citation:**

- Weinstein Aff. ¶23.

3.      At the parties' June 10, 2010 meeting, the DCHA representatives voiced

absolutely no objection or comment and continued the negotiations, advising Plaintiff

that DCHA would respond shortly to what it described as Plaintiff's "settlement offer."

**Citation:**

- Weinstein Aff. ¶23.

16

4.     Prior to DCHA taking possession of the property in 1997, Plaintiff visited the property with DCHA representatives multiple times.  During those visits, DCHA representatives inspected the condition of the property to determine whether it was appropriate to meet their needs.  As a result of those inspections, DCHA requested that Plaintiff make certain alterations to the property prior to their taking possession of the property.  Those specific requested alterations were outlined in an addendum to the lease entered into between Plaintiff and DCHA on October 17, 1997.

**<u>Citation</u>:**

- Affidavit of Stanford B. Weinstein, sworn to July 9, 2012 ("Weinstein July 2012 Aff.") ¶2.
- Addendum to Lease, dated October 17, 1997, attached hereto as Exhibit A.

5.     In the October 17, 1997 lease addendum, Plaintiff agreed to (a) install floor tiles in the lower level reception area and in the front two offices on the main level of the warehouse; (b) remove that part of the mezzanine level observation deck which extends into the main work area; and, (c) ensure that the air conditioning system was fully operational.  Plaintiff completed each of these tasks at his own expense prior to DCHA taking possession of the property.  No other alterations, modifications, repairs, or replacements were ever requested by DCHA. When DCHA took possession of the property, DCHA did not notify Plaintiff of any problem with the condition of the property or any of its systems or fixtures.  DCHA also did not notify Plaintiff of any need to make any repairs or that any element of the property was "unusable".

**<u>Citation</u>:**

- Weinstein July 2012 Aff. ¶3.
- Addendum to Lease, dated October 17, 1997, attached hereto as Exhibit A.

6.      When DCHA took possession, the property was in good condition and its

systems were in good working order.  Specifically,

   a.  The property was clean and broom swept;
   b.  The floors and walls of the warehouse and offices did not have holes, leaks or
       otherwise require repair;
   c.  The bathrooms were in good working condition, had toilet paper and soap
       dispensers and did not require repair;
   d.  The stairs had nosings in place and did not require repair;
   e.  The overhead garage doors were in good working condition and did not
       require repair;
   f.  The water fountain was in good working condition and did not require repair;
   g.  The roof was free of leaks, in good working condition, had all gutters and
       flashing in place, and did not require repair;
   h.  The HVAC system was operating, properly maintained, in good working
       condition and did not require repair;
   i.  The electrical system was in good working condition and did not require
       repair.

**Citation:**

- Weinstein July 2012 Aff. ¶4.

7.      After DCHA took possession of the Property in 1997, Plaintiff did not enter the

Property again until the Spring of 2010.

**Citation:**

- Weinstein July 2012 Aff. ¶5.

8.      From time to time during the course of DCHA's tenancy, Plaintiff passed by the

Property and observed it from the outside.  On a handful of occasions, a DCHA

representative was outside the Property and Plaintiff would stop and speak with those

representatives while observing the Property from the outside.

**Citation:**

- Weinstein July 2012 Aff. ¶5.

9.     Plaintiff was not aware of the substantial alterations that DCHA had performed at the Property before Plaintiff entered the Property in the Spring of 2010.  When Plaintiff observed the Property from the outside during DCHA's tenancy, Plaintiff could not see into the Property to observe the substantial alterations.

**Citation:**

- Weinstein July 2012 Aff. ¶6.

10.     Pizzano General Contractors, Inc. was hired to perform repairs at the Property within a matter of days of DCHA vacating the Property.

**Citation:**

- Weinstein July 2012 Aff. ¶7.
- Affidavit of Samuel Silverman, sworn to June 7, 2012 ¶4 and Ex. 1, ECF No. 40.

11.     Pizzano General Contractors, Inc. ("Pizzano") and Virginia Roofing Corporation were not instructed to "bring the Property up to code" or to make any renovations that Plaintiff was "legally required to do".

**Citation:**

- Weinstein July 2012 Aff. ¶8.

12.     Plaintiff was not legally required to make any renovations to the Property.

**Citation:**

- Weinstein July 2012 Aff. ¶9.

13.     After DCHA vacated the property at issue in this case, Plaintiff did not apply for or receive any permit relating to the property.

- Weinstein July 2012 Aff. ¶10.

14.     DCHA has not overpaid Plaintiff; rather, DCHA, after receiving credit for its

security deposit and $7,000 in prepaid rent, owes Plaintiff in excess of $500,000 for

unpaid real estate taxes, utility charges, late fees and interest, repairs to the Property

and costs incurred by Plaintiff to enforce his rights pursuant to the Lease.

**Citation**:

- Weinstein July 2012 Aff. ¶11.
- Appendix A to the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, ECF No. 40.

Dated:        July 10, 2012

Respectfully submitted,


/s/ Judah Lifschitz

Judah Lifschitz, Esq.  (DC Bar No. 963330)
Laura Fraher, Esq. (DC Bar No. 979720)
SHAPIRO LIFSCHITZ & SCHRAM, P.C.
1742 N Street, NW
Washington, DC  20036
(202) 689-1900 (telephone)
(202) 689-1901 (facsimile)
Lifschitz@slslaw.com
Fraher@slslaw.com

*Attorneys for Plaintiff Stanford Weinstein*