**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
Stanford B. Weinstein,                    )
                                          )  Case No. 1:10-cv-01768
                                          )   Judge Contreras
                 Plaintiff,               )
                                          )
        v.                                )
                                          )
District of Columbia Housing Authority,   )
                                          )
                                          )
                 Defendant.               )
_____)


**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER
SUPPORT OF HIS MOTION TO STRIKE DEFENDANT'S MOTION FOR SUMMARY
<u>JUDGMENT AND ACCOMPANYING PAPERS</u>**

Plaintiff Stanford B. Weinstein ("Plaintiff"), through counsel, hereby submits this

Reply Memorandum of Points and Authorities in Further Support of his Motion to Strike

Defendant District of Columbia Housing Authority's ("Defendant" or "DCHA") Motion for

Summary Judgment and Accompanying Papers.  For the reasons stated below, and in

Plaintiff's Memorandum in Support, Plaintiff's motion should be granted.

A.  <u>DCHA Did Not Timely File It's Motion for Summary Judgment</u>

For all of the reasons set forth in Plaintiff's Memorandum in Support, [1]  the Court

should strike Defendant's Motion for Summary Judgment and all of the accompanying

papers for failure to comply with the Court's filing deadline.

_____
[1] References to Plaintiff's Memorandum in Support refer to Plaintiff Stanford B. Weinstein's Memorandum
of Points and Authorities in Support of His Motion to Strike Defendant's Motion for Summary Judgment
and Accompanying Papers, ECF No 44.

In its Amended Opposition,[2] DCHA focuses on the "reasonableness" of the many previous delays and extensions that have been granted for its benefit.  *See* Amended Opposition at p.2-6.  Whether each of those extensions was "reasonable" has nothing to do with the filing of this motion, nor is it at issue here.  Moreover, "reasonable" or not, it cannot be seriously disputed (nor does DCHA try to dispute) that DCHA has been granted extensions at almost every possible stage of this case for reasons ranging from family emergencies, family events, health issues of attorneys and witnesses, and workload issues.  In short, DCHA has been given every opportunity to litigate this case on a schedule that it has dictated for its convenience and to the detriment of Plaintiff's ability to timely prosecute his action.  There is no reason that this Court should now also allow DCHA to file its motion for summary judgment after the filing deadline expired.

More importantly, DCHA fails even to address or explain why the Court should accept its June 13, 2012 filing which was materially different than the document it filed on June 12, 2012.  DCHA instead focuses on the irrelevant issue of whether its first filing was filed at 11:58 pm or 12:04 am. See Amended Opposition at p.4-5.  As Plaintiff clearly stated in his Memorandum in Support, "although technically after the filing deadline, Plaintiff does not object to the Court's acceptance of [DCHA's first] filing.  *See* Mem. in Support at p.13.  Thus, whether the timestamp on DCHA's internal network is correct is completely irrelevant to this motion.

What is relevant is that when DCHA was instructed to re-file its motion because of a "filing error", DCHA opted not to re-file the summary judgment motion it originally filed.  Instead, DCHA filed an entirely different motion adding multiple pages of

---

[2] References to Amended Opposition are to Defendant District of Columbia Housing Authority's Amended Opposition to Plaintiff's Motion to Strike, ECF No. 51.

argument at different places within the document and adding facts to its statement of material facts.  A simple review of the two sets of documents filed by DCHA reveals that DCHA did not re-file its summary judgment motion because of a filing error; rather, it replaced its summary judgment motion with a new motion.  *Compare* Memorandum of Points and Authorities filed June 13, 2012 at 12:05 a.m. (Exhibit E to Plaintiff's Memorandum in Support) at p.16-17 to Memorandum of Points and Authorities filed June 13, 2012 at 8:09 p.m., Docket No. 42, at p.16-17; *Compare* Exhibit E to Plaintiff's Memorandum in Support at Section II.B to Docket No. 42 at Section II.B; *Compare* Exhibit E to Plaintiff's Memorandum in Support at Section II.C to Docket No. 42 at II.C.i; *Compare* Statement of Material Facts filed June 13, 2012 at 12:05 a.m., (Exhibit F to Plaintiff's Memorandum in Support) to Statement of Material Facts filed June 13, 2012 at 12:05 a.m., Docket No. 42, at ¶¶17-18.  In its opposition papers, DCHA states without explanation or citation that it "at no time attempted to create a new deadline."  *See* Amended Opposition at p.6.  However, DCHA does not even try to explain why it filed a new motion, rather than re-file its original motion after the deadline had passed.  Plaintiff would not have objected to DCHA's correction of a filing error by re-filing its motion papers.  Plaintiff does, however, object to DCHA's using a "filing error" to grant itself an additional day to prepare and file an entirely different motion.

Pursuant to Federal Rule of Civil Procedure 6(b)(2), DCHA must show excusable neglect to be entitled to an extension of the June 12th filing deadline.  No such showing has been made.  After multiple extensions, DCHA was allowed more than two months to file its dispositive motion.  *See* Transcript of April 3, 2012 Status Conference 4:18-24 (Exhibit A to Plaintiff's Memorandum in Support); Minute Order, *Weinstein v. District of*

*Columbia Housing Authority*, Civ. No. 10-1768 (D.D.C. April 3, 2012) (RMC); Minute

Order, *Weinstein v. District of Columbia Housing Authority*, Civ. No. 10-1768 (D.D.C.

May 15, 2012) (RC); Minute Order, *Weinstein v. District of Columbia Housing Authority*,

Civ. No. 10-1768 (D.D.C. June 6, 2012) (RC); Minute Order, *Weinstein v. District of*

*Columbia Housing Authority*, Civ. No. 10-1768 (D.D.C. July 12, 2012) (RC).  And, the

Court specifically advised DCHA, that the "court w[ould] not entertain any further

requests to modify the dispositive motion briefing schedule."  *See* Minute Order,

*Weinstein v. District of Columbia Housing Authority*, Civ. No. 10-1768 (D.D.C. June 6,

2012) (RC).  There is simply no basis to allow DCHA to disregard the dispositive motion

schedule and file new papers on June 13, 2012.  For these reasons, DCHA's papers

filed at 8 p.m. on June 13, 2012 should be stricken from the record.

B.  <u>DCHA is Bound By The Testimony Given at the 30(b)(6) Deposition</u>

     As fully set forth in Plaintiff's Memorandum in Support, the law applied by this

Court is clear:  "By commissioning the [30(b)(6)] designee as the voice of the

corporation, the Rule obligates a corporate party to prepare its designee to be able to

give binding answers on its behalf.  Unless it can prove that the information was not

known or was inaccessible, a corporation cannot later proffer new or different

allegations that could have been made at the time of the 30(b)(6) deposition."  *Rainey v.*

*American Forest and Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 94 (D. D.C. 1998) (internal

citations omitted).   Here, DCHA improperly seeks to supplement its binding 30(b)(6)

testimony with affidavits.  If the Court were to accept these inappropriate affidavits, it

would be allowing DCHA to "thwart[] inquiries during discovery, then stag[e] an ambush

4

during a later phase of the case" – which is exactly what Rule 30(b)(6) is designed to protect against.  *Id.* at 95.

In its Amended Opposition, DCHA does not even attempt to establish that the new information contained in its affidavits was not known or was inaccessible at the time of the deposition.  As the *Rainey* Court held, allowing DCHA to admit these affidavits after failing to provide the information contained therein during the depositions "would eviscerate the force of Rule 30(b)(6), and would delay litigation, heighten suspicions, and obfuscate the discovery process.  Rule 30(b)(6) was designed to prevent such consequences, and in order to adhere to its terms, it is improper to consider the [] affidavit[s]."  *Id.* at 96.  The affidavits must, therefore, be stricken.

    1.  <u>The Arthur Affidavit</u>

With respect to the Affidavit of Kenneth Arthur, DCHA states in its Amended Opposition that the Affidavit should not be stricken because:

- "[a]s Plaintiff is aware, a 30(b)(6) or Corporate designee's testimony does not have to be based on personal knowledge.
- "DCHA fact witness, Hugh Trigg's Affidavit, supports the contents of Mr. Arthur's affidavit and testimony."
- "Mr. Arthur's affidavit is consistent with his testimony and should not be stricken."

*See* Amended Opposition at p. 6.  DCHA is wrong.

First, the Arthur Affidavit states that he is "competent to testify to the matters below."  There is no indication in the Affidavit that it is intended to offer "30(b)(6) testimony" rather than offer the individual testimony of Mr. Arthur.  *See* Affidavit of Kenneth Arthur, sworn to June 12, 2012, ECF No. 42 ("Arthur Aff.").  Moreover, Federal Rule of Civil Procedure 30(b)(6) sets forth a procedure for providing deposition testimony, it does not by its terms apply to affidavits.  Rule 56 of the Federal Rules of

Civil Procedure clearly provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).  As DCHA concedes, the Arthur Affidavit is not based on personal knowledge as required by Rule 56 and, therefore, it should be stricken.

Further, whether or not the Court would accept a "30(b)(6) affidavit" not based on personal knowledge, the Arthur Affidavit must be stricken because it improperly seeks to supplement DCHA's 30(b)(6) testimony.  DCHA declares that the affidavit is "consistent" with the 30(b)(6) testimony without citation or explanation.  See Amended Opposition at p.6.  However, the appropriate inquiry is not whether the testimony is "consistent"; rather, the Court must not accept any portion of the affidavit that "raise[s] either contradictory information or new information that could have been provided by the agency designee" (see Moore v. Summers, 113 F. Supp. 2d 5, 28 (D. D.C. 2000)) or offers a "substantial revision of defendant's legal and factual positions" – whether or not it is arguably "consistent" with the previous testimony (see Rainey, 26 F. Supp. 2d at 95).

A review of the record clearly shows that the Arthur Affidavit improperly seeks to substantially revise the 30(b)(6) testimony by offering both contradictory and new information that was not provided at the deposition.  At the deposition, the proper admissible testimony given[3] was that at the time DCHA took possession of the property,

---

[3] The testimony provided by Mr. Arthur during the examination conducted by his own counsel is inadmissible and thus may not be considered by this Court. Mr. Arthur's inadmissible testimony was taken subject to Plaintiff's objection to Defendant's leading questions.  Plaintiff objects to its use by Defendant to support facts it asserts in its motion, and it should be disregarded by this Court.  See Fed. R. Civ. P.

the interior of the building was "dirty", it had no working toilets, there was a water

fountain with a lead pipe and, to DCHA's knowledge, the rest of the property was in fine

working condition.  *See* Transcript of 30(b)(6) Deposition of DCHA (Arthur) ("Arthur

Tr."), 33:4-34:9 (Exhibit M to Plaintiff's Memorandum in Support).  In his affidavit, Mr.

Arthur states:

- Mr. Triggs repaired the toilets (¶7)
- Mr. Triggs replaced the water fountain (¶7)
- Mr. Triggs painted the Property (¶7)
- When Mr. Triggs first occupied the Property, he observed a bunch of electrical wires that he had to trace wires back to the panel to find out which breaker the wires were connected to because the panel was not labeled (¶8)
- DCHA replaced the office floor and ceiling tiles (¶11)

*See* Arthur Aff.  Each of these facts is new information that could have been given at the

30(b)(6) deposition and, if accepted now would improperly allow DCHA to substantially

revise the position it took at the 30(b)(6) deposition.

Finally, DCHA states that the statements in Mr. Arthur's affidavit are "supported"

by the Affidavit of Hugh Triggs.  *See* Amended Opposition at p.6.  DCHA fails to explain

why this should be of interest to the Court or how this is relevant to whether or not the

Court should accept Mr. Arthur's affidavit.  The Arthur Affidavit must be considered on

its merits.  It is not based on personal knowledge and it improperly seeks to supplement

the binding 30(b)(6) testimony.  It should, therefore be stricken and this entirely

improper affidavit cannot be salvaged by "supporting" it with the affidavit of any number

of additional fact witnesses.

2. The Triggs Affidavit

---

30; Fed. R. Civ. P. 56; Fed. R. Evid. 611.  In its Amended Opposition, DCHA fails even to address the issue of whether the Court should consider this objectionable testimony and, for the reasons set forth more fully in Plaintiff's Memorandum in Support, the testimony should not be considered.

With respect to the Affidavit of Hugh Triggs, DCHA states in its opposition that
the affidavit should not be stricken because:

- "DCHA properly identified . . . Mr. Triggs as [a] fact witness[]"
- "Mr. Triggs [is a] fact witness[] and ha[s] personal knowledge as to events
  surrounding the facts raised in the complaint"
- Mr. Triggs' "sworn statement [does not] contradict[] the 30(b)(6) testimony

See Amended Opposition at p. 6 and 7.  Again, DCHA is wrong.

First, Mr. Triggs was never "properly identified" as a witness prepared to testify
regarding the condition of the property at the time DCHA took possession.  Mr. Triggs
was not identified as a person likely to have discoverable information in DCHA's May
27, 2011 Initial Disclosures.  See Defendant District of Columbia Housing Authority's
Initial Disclosure (attached hereto as Exhibit A).  Mr. Triggs was not identified as a
person with knowledge of the facts and issues relating to this case in Defendant's July
18, 2011 response to Plaintiff's Interrogatory No. 2 (attached hereto as Exhibit B).  Nor
was Mr. Triggs identified in DCHA's September 29, 2011 amended response to
Interrogatory No. 2 (attached hereto as Exhibit C).  Mr. Triggs was finally identified as a
person with knowledge of facts relating to this case in DCHA's February 3, 2012
supplemental response to Plaintiff's Interrogatory No. 2 (attached hereto as Exhibit D).
This belated response was provided long after the original fact discovery cut-off had
passed and was extended for the limited purpose of completing the DCHA 30(b)(6)
deposition – not to allow Plaintiff to notice additional fact depositions.  More importantly,
when Mr. Triggs was finally identified as a relevant fact witness, the scope of his
knowledge was identified as "he worked out of the Property from 2001 to 2006 or 2007"
(see Exhibit D) – this certainly would not have alerted Plaintiff that Mr. Triggs was a fact

witness that might testify regarding the condition of the Property at the time DCHA took possession in 1997, even if DCHA had managed to identify him in a timely fashion.

More importantly, whether DCHA identified Mr. Triggs as a fact witness is completely irrelevant.  Plaintiff is not obligated to depose every available fact witness to obtain their individual testimony.  And, if Plaintiff had taken Mr. Triggs' deposition as a fact witness, that testimony would not be a binding statement of the position of DCHA for the purposes of this motion.  Rule 30(b)(6) is designed to allow Plaintiff to elicit the binding testimony of DCHA.  DCHA has the option of producing a designee that has personal knowledge or one that does not.  But, DCHA is also "obligate[d] . . . to prepare its designee to be able to give binding answers on its behalf."  *Rainey*, 26 F. Supp. 2d at 94.  DCHA opted not to designate Mr. Triggs as its corporate designee and DCHA apparently did not prepare its designee to give the testimony that Mr. Triggs would have given.  DCHA is bound by those decisions and Plaintiff's choice not to take Mr. Triggs' individual deposition does nothing to change that.

In fact, the Court considered and rejected this exact argument in *Rainey*:

> At the July 14 hearing, defendant claimed that it was not ambushing plaintiff—and thus not violating Rule 30(b)(6) — because throughout its answers and interrogatories it identified Ms. Kurtz as plaintiff's supervisor and as "as someone who was knowledgeable about [plaintiff's] hours of work."  Defendant's citations, while accurate, do not support its ultimate legal position.  Rule 30(b)(6) does not require a corporate party to facilitate preparation of its opponent's legal case; but it binds the corporate party to the positions taken by its 30(b)(6) witnesses so that opponents are, by and large, insulated from trial by ambush.  Defendant's identification of Ms. Kurtz as a knowledgeable party did not provide the protection contemplated by Rule 30(b)(6), since the specific assertions in Ms. Kurtz's affidavit vary in critical respects from those made by the corporate representatives.  Defendant's argument cannot forestall the conclusion that introduction of the Kurtz affidavit would constitute a violation of Rule 30(b)(6).

*Rainey*, 26 F. Supp. 2d at 96-97.  DCHA's identical argument should also be rejected.

Next DCHA asserts that the affidavit should not be stricken because Mr. Triggs has personal knowledge regarding the events.  *See* Amended Opposition at p.7.  DCHA again offers no explanation or citation to suggest that this fact is relevant or supports its opposition to Plaintiff's motion.  In fact, whether Mr. Triggs has personal knowledge of the facts has absolutely nothing to do with whether his testimony improperly seeks to supplement binding 30(b)(6) testimony and has nothing to do with the issue raised in this motion.

Finally, DCHA asserts, again without citation or support, that the affidavit does not "contradict" the 30(b)(6) testimony.  *See* Amended Opposition at p.7.  Again, as explained above, DCHA cites the wrong standard.  The appropriate inquiry on this motion is not whether the affidavit "contradicts" the testimony; rather, the Court must not accept any portion of the affidavit that "raise[s] either contradictory information or new information that could have been provided by the agency designee" (*see Moore*, 113 F. Supp. 2d at 28) or offers a "substantial revision of defendant's legal and factual positions" (*see Rainey*, 26 F. Supp. 2d at 95) – whether or not it "contradicts" the previous testimony.

A review of the record clearly shows that the Triggs Affidavit improperly seeks to substantially revise the 30(b)(6) testimony by offering both contradictory and new information that was not provided at the deposition.  Again, at the deposition, the proper admissible testimony given was that at the time DCHA took possession of the property, the interior of the building was "dirty", it had no working toilets, there was a water fountain with a lead pipe and, to DCHA's knowledge, the rest of the property was in fine

working condition.  *See* Arthur Tr. 33:4-34:9.  In his affidavit, Mr. Triggs states that at

the time DCHA took possession of the property, it (a) required repairs to wiring and

plumbing (¶4); (b) required installation of electrical outlets to be "usable" (¶6); (c) had an

unlabeled electrical circuit panel and abandoned wires (¶7); (d) had abandoned duct

work (¶8); (e) required repairs to the walls and floors of the offices (¶¶10-11); (e) had an

"unusable" water fountain (¶12); (f) had "unusable" bathrooms (¶13); (g) required repairs

to the stairs and overhead doors (¶15).  *See* Affidavit of Hugh Triggs, sworn to June 12,

2012, Docket No. 42.  Each of these newly offered facts is information that could have

been given at the 30(b)(6) deposition and, if accepted now would improperly allow

DCHA to substantially revise the position it took at the 30(b)(6) deposition.[4]

    3.  The Brown Affidavit

With respect to the Affidavit of Qwendolyn Brown, DCHA states in its Amended

Opposition that the affidavit should not be stricken because:

- "DCHA properly identified . . . Ms. Brown as [a] fact witness[]"
- "[D]ue to Ms. Dean's continued medical condition, Ms. Lorry Bonds did not have the luxury of speaking with Ms. Dean in preparation for her deposition."
- "Ms. Brown [is a] fact witness[] and ha[s] personal knowledge as to events surrounding the facts raised in the complaint"
- Ms. Brown's "testimony is consistent" and  "sworn statement [does not] contradict[] the 30(b)(6) testimony"

_____

[4] If the Court does consider the testimony given by Mr. Arthur in response to his counsel's leading questions, which for the reasons set forth in n.3 above and in Plaintiff's Memorandum in Support at p.10-11 and n.2 it should not, the only additional "facts" that Mr. Arthur was able to testify he had knowledge of were:

- "There are a bunch of wires there, when they got in to the building" (*See* Arthur Tr. 55:15-16)
- "The [electrical] panel was not labeled" (*See* Arthur Tr. 56:3)
- "ceiling tiles needed to be replaced" (*See* Arthur Tr. 57:10-11)
- "[floor tiles] were in bad condition" (*See* Arthur Tr. 57:18-22)

Therefore, even accepting this inadmissible testimony, the Triggs Affidavit still improperly seeks to supplement the 30(b)(6) testimony and, to that extent, should still be stricken from the record.

*See* Amended Opposition at p. 6 and 7.  Again, DCHA is wrong.

First, like Mr. Triggs, Ms. Brown was not "properly identified" by DCHA as a fact witness.  Ms. Brown was not listed in DCHA's initial disclosures (*see* Exhibit A), in DCHA's response to Interrogatory No. 2 (*see* Exhibit B) or in DCHA's amended response to Interrogatory No. 2 (*see* Exhibit C).  When Ms. Brown was finally identified in the February 2012 supplemental response to Interrogatory No. 2, DCHA identified that Ms. Brown "would have knowledge regarding the Lease" (*see* Exhibit D).  This could not have put Plaintiff on notice that Ms. Brown would testify regarding a statement that is alleged to have occurred at a meeting between the parties in June 2010.  More importantly, for all the reasons set forth above, whether or not DCHA identified Ms. Brown is entirely irrelevant and would not permit DCHA to impermissibly supplement its binding 30(b)(6) testimony through her affidavit.

DCHA next argues that the Brown Affidavit is appropriate because the 30(b)(6) deponent Ms. Bonds did not have an opportunity to speak with Ms. Dean in preparation for the deposition.  *See* Amended Opposition at p.7.  Once again, DCHA raises an entirely irrelevant fact and fails to explain or offer any reason that this fact supports its opposition to Plaintiff's motion.  The issue here is whether the Court should accept the affidavit of Ms. Brown.  DCHA does not purport to claim that Ms. Brown could not herself have been identified as the 30(b)(6) deponent or that Ms. Bonds could not have spoken to Ms. Brown in preparation for the deposition.  There is no basis to presume that if Ms. Bonds had spoken to Ms. Dean in preparation for her deposition that Ms. Dean would have told her what Ms. Brown would later claim in an affidavit.  Nor is there any other basis to suggest that the unavailability of Ms. Dean has anything at all to do

with whether DCHA's 30(b)(6) deponent should have been prepared to testify to facts

that DCHA now improperly seeks to admit through the affidavit of Ms. Brown.

In fact, it is notable that when this case was initially filed, DCHA filed a motion to

dismiss and argued that an accord and satisfaction had occurred.  *See* DCHA's Motion

to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 3.  That motion was

supported by the affidavit of Ms. Dean.  *See* Affidavit of Lisa Dean, sworn to November

10, 2010, ECF No. 3.  Nowhere in DCHA's motion is it alleged that Plaintiff was told at

the parties' June 2010 meeting that the June 2010 check was intended as an accord

and satisfaction.  *See* ECF No. 3.  And, nowhere in Ms. Dean's affidavit does it say

anything to support that claim – which Ms. Brown now makes in her affidavit.  *See* ECF

No. 3.  In opposition to that motion, Plaintiff submitted an affidavit in which he

specifically denied that any DCHA representative ever told him that the June 2010

check was intended as an accord and satisfaction.  *See* Affidavit of Stanford B.

Weinstein, sworn to November 26, 2010 at ¶¶15, 18, ECF No. 5.  DCHA filed a reply

and a sur-sur-reply to that motion (*see* ECF No. 7 and 12) and never once contradicted

Plaintiff's statement or otherwise suggested that such a statement had been made.

Thus, even if it was somehow relevant that Ms. Bonds didn't speak to Ms. Dean in

preparation for her deposition – which it is not -- there is absolutely no reason to

assume that Ms. Dean would now suddenly take the position that such a statement was

made.

DCHA next argues that the affidavit should be accepted because Ms. Brown is a

fact witness with personal knowledge of the issues.  *See* Amended Opposition at p.7.

Again, as stated above, this is entirely irrelevant.  This information should have been

provided at the 30(b)(6) deposition.  It was not.  DCHA cannot introduce it now –

through a fact witness with personal knowledge or any other means -- because it is

bound by its 30(b)(6) testimony.

Finally, DCHA argues that the affidavit should not be stricken because it is

"consistent" with the 30(b)(6) testimony.  *See* Amended Opposition at p.7.  But, again,

this is not the applicable standard or the relevant question.  This Court must reject the

affidavit if it seeks to revise the 30(b)(6) testimony by offering new or different

information that could have been provided at the deposition – whether or not it is

consistent with the testimony given.  *See Moore*, 113 F. Supp. 2d at 28; *Rainey*, 26 F.

Supp. 2d at 95.  At the 30(b)(6) deposition, the testimony given was that the sole basis

of its defense of accord and satisfaction is the May 21, 2010 letter, not any alleged oral

representation to Mr. Weinstein (*See* Transcript of 30(b)(6) Deposition of DCHA (Bonds)

Tr. 35:1-12 ("Bonds Tr.") (Exhibit K to Plaintiff's Memorandum in Support) and that Mr.

Weinstein was not told "words to the effect" of "if you cash that check, it's all over" (*see*

Bonds Tr. 34:14-35:12).  Now DCHA seeks to offer Ms. Brown's affidavit which asserts

that Ms. Dean told Plaintiff and she "personally reiterated DCHA's position to Plaintiff as

it related to the June 1. 2010 check, which was for settlement of all outstanding claims

as outlined in the May 21, 2010 letter".  *See* Affidavit of Qwendolyn Brown, sworn to

June 12, 2012 ¶¶9,10, Docket No. 42. This is a complete revision of the testimony given

at the 30(b)(6) deposition and must, therefore, be rejected.

## CONCLUSION

For the reasons set forth herein and in Plaintiff's Memorandum in Support,

Plaintiff's motion should be granted and the Court should strike and refuse to consider

all of the papers filed by DCHA at 8 p.m. on June 13, 2012.  Alternatively, the Court

should strike and refuse to consider the Affidavits of Hugh Triggs, Kenneth Arthur and

Qwendolyn Brown, and any other affidavit that seeks to revise the binding testimony

provided at the 30(b)(6) deposition, is not based on personal knowledge, and/or is not

admissible under the Federal Rules of Civil Procedure and Federal Rules of Evidence.

Dated:      July 23, 2012

                              Respectfully submitted,


                              /s/ Judah Lifschitz
                              _____

                              Judah Lifschitz, Esq.  (DC Bar No. 963330)
                              Laura Fraher, Esq. (DC Bar No. 979720)
                              SHAPIRO LIFSCHITZ & SCHRAM, P.C.
                              1742 N Street, NW
                              Washington, DC  20036
                              (202) 689-1900 (telephone)
                              (202) 689-1901 (facsimile)
                              Lifschitz@slslaw.com

                              *Attorneys for Plaintiff Stanford Weinstein*